Lee J. NAHM, Plaintiff-Respondent,

v.

Marcella M. NAHM, Defendant-Appellant.

No. 34170.

Missouri Court of Appeals,
St. Louis District.

Feb. 23, 1972.

James A. Pudlowski, St. Louis, for defendant-appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, Edgar G. Boedeker, Martin Schiff, Jr., Clayton, for plaintiff-respondent.

DOWD, Judge.

The plaintiff filed suit against his wife for divorce, and she countered with a cross-bill for divorce, custody of the minor children, alimony and child support, and suit money and attorney fees. The court below awarded plaintiff the divorce, and awarded defendant custody of the children. The court also ordered the plaintiff to pay $250 per month per child for child support and the attorney's fee of $1500.

Defendant contends on appeal that the court erred in awarding plaintiff a divorce, in not granting a divorce to defendant, and

in failing to specifically rule on defendant's cross-bill for divorce.

■ Since this is a divorce action, we must review all the evidence and reach our own conclusion as to the proper judgment to be entered. However, the judgment of the court below will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R.

Plaintiff's testimony was as follows. Plaintiff and defendant were married in St. Louis, Missouri in September of 1942, and subsequently had six children before separating in April of 1969. Plaintiff was an assistant vice-president of a local bank, and on his own time also operated a bookkeeping and tax service. Because of the two jobs, and also because plaintiff was expected to solicit and entertain potential customers of the bank, he was absent from home a great deal of time.

He stated that his wife repeatedly, and without cause, accused him of gambling, drunkenness and infidelity, both in private and in public. She used to call his friends and business associates to check up on his whereabouts. On two occasions she had thrown objects at him once a souvenir rock and once a couple of whiskey bottles. On another occasion, she physically attacked him and scratched his face and then ordered him out of the house. He testified that he had given her no provocation for these acts. Since 1968, she had refused to go out with him socially, though previously she had done so. She also stopped fixing his evening meal and mending his clothes. Finally, just prior to the separation, she refused to cohabit with him and she insisted on his moving out of the home.

Plaintiff handled all the family finances, customarily leaving about $50 or $100 in cash in the house for the defendant to use for groceries and other needs. However, he emphasized that he and his wife had a joint checking account which was available to her. His gross earnings were around $21,000 per year, all of which went for the household expenses and the needs of his family, including the children's tuition at various schools amounting to several thousand dollars per year.

He admitted in his testimony that he had a key to the Playboy Club which he concealed from his wife, who considered the place immoral. He went to the Playboy Club about six times a year to entertain customers. As for his relationship with his children, he admitted having neglected usual parental duties because of his work load, but claimed the defendant had made matters much worse by her false accusations in the children's presence and her constant interference with his attempts at discipline. He denied all charges of infidelity, withholding of money from his family, and excessive drinking. Two character witnesses, one a male business associate, the other the wife of a business associate, and a social acquaintance of both parties testified to his gentlemanly conduct and sobriety.

Defendant, for her part, testified that she had kept house for the plaintiff for 28 years, and always had his meals ready whenever he came home at night. However, he very seldom was at home and he never kept her informed of his whereabouts. She claimed total ignorance of their finances because of her husband's refusal to discuss money matters with her. He reprimanded her several times in public, and embarrassed her by his obvious attentions to other women.

She testified to an incident involving plaintiff's female witness, when plaintiff had attempted to look under the woman's dress. While admitting that everyone else considered it a joke, she did not regard it as such.

She admitted to having made calls to various places and people for the purpose of checking on defendant's whereabouts. She only did this when he was out late and she didn't know where he was. During the

last three years of their marriage, she stated that they quarreled almost constantly, creating an air of tension which upset the children. The rock-throwing incident was a result of plaintiff's having compared her sexually to other women. The bottle-throwing was occasioned by plaintiff calling her a "parasite." On the other hand, she testified that plaintiff would never argue, but called her names, such as "bitch" or "parasite." She denied that she had ever scratched him but stated she saw scratches on his body.

Defendant further testified that plaintiff had never taken any interest in his children and had not given them birthday and Christmas presents, nor would he pay for all their schooling. She claimed $1287 in monthly living expenses and stated that she had no income except for $200 board paid by her children, because she had not worked since the earlier years of their marriage.

The couple's 27 year old daughter Barbara was the only witness for the defendant. She testified that her mother had always kept the house and cooked her father's meals. She was present at the alleged face-scratching incident but testified she saw no blood on her father. She did corroborate her father's testimony that bottles were thrown by her mother but stated the bottles were not thrown at anyone. She further reiterated his lack of rapport with his children, but admitted that he had paid at least part of her college tuition.

■ Obviously, there is direct conflict in the testimony here. Therefore, the proper disposition of this case necessarily depends on the credibility of the witnesses. That being the case, we must give great weight to the findings of the trial judge who saw and heard the witnesses. Boyd v. Boyd, Mo.App., 459 S.W.2d 8.

Applying these rules to this case, we must agree with the conclusions reached by the trial judge and affirm the judgment. It is apparent that the lower court believed the testimony of the respondent and his witnesses and did not believe the testimony of the appellant and her daughter. It here appears, from reading the transcript, that plaintiff's testimony was reasonable and his story credible. His language was restrained and he conceded some facts which were unfavorable to him. Defendant's testimony, on the other hand, tends to be opinionated and contradictory. The allegations of her petition which stated plaintiff was selfish, that he entertained other women, that he was untruthful, and that he refused to pay for the children's education were not borne out by any testimony, including the defendant's own. Her testimony in fact tended to corroborate the plaintiff's allegations of groundless accusations and suspicion, as well as a tendency to vent her feeling by physical force. At one point, she herself admitted that words and actions regarded by her as "dirty" were considered jokes by others present. From our review of the record, we cannot conclude that there was sufficient provocation for the specific incidents testified to, by both parties, i. e., the throwing of objects at plaintiff, and his subsequent ejections from the house.

■ Here the deterioration of this marriage had admittedly begun some years before the separation. The case falls under the general principle that indignities sufficient to sustain a decree of divorce are wrongful acts over a course of time which are of sufficient gravity or magnitude to make plaintiff's life as defendant's spouse intolerable. Moore v. Moore, Mo. App., 337 S.W.2d 781. See also Coleman v. Coleman, Mo.App., 318 S.W.2d 378. The court below obviously concluded that plaintiff had endured such indignities over a period of time, and that, while not by any means a perfect spouse himself, nevertheless, he could not be said to have provoked the indignities by his misconduct. We cannot, upon examination of the record, conclude that the trial court was in error.

We must also rule against appellant's contention that the lower court erred in not specifically ruling on defendant's cross-bill and in not awarding the defendant alimony. Since the trial court entered a decree of divorce for the plaintiff, it impliedly ruled against the defendant's cross-bill for divorce, even though this was not mentioned in the final judgment. Glick v. Glick, Mo., 372 S.W.2d 912.

Because the divorce to the husband was granted due to the wife's fault, the judgment correctly contained no award of alimony to the wife. Section 452.090, RSMo 1969, V.A.M.S.; Spencer v. Spencer, Mo.App., 382 S.W.2d 237 [10]; Willis v. Willis, Mo., 274 S.W.2d 621 [19].

The judgment is affirmed.

BRADY, C. J., and ROBERT LEE CAMPBELL, Special Judge, concur.