**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Respondent,**

v.

**Cathren C. McBRIDE and Joseph A. Braden, Defendants-Appellants.**

**No. 34601.**

Missouri Court of Appeals, St. Louis District, Division One.

Dec. 19, 1972.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, John J. Horgan, St. Louis, for defendants-appellants.

Carter, Brinker & Doyen, Clayton, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal from a declaratory judgment by defendant Cathren C. McBride, mother of Michael P. McBride, deceased, wherein the trial court found that Michael P. McBride and Joseph A. Braden were residents of the household of the insured under the terms of an insurance policy which excluded coverage for bodily injury or death "to the insured or any mem-

ber of the family of the insured residing in the same household as the insured." We agree.

After Cathren McBride filed suit for wrongful death against defendant Joseph A. Braden, plaintiff—State Farm Mutual Insurance Company, hereinafter referred to as "State Farm," instituted this suit against defendants Cathren McBride and Joseph A. Braden. Braden's parents are the insured under the policy in question issued by State Farm.

State Farm's policy issued to Paul A. and Emma Jean Braden, the parents of Joseph A. Braden, provided:

Exclusion (1)

"This insurance does not apply under: . . . (i) coverage A, (Bodily Injury Liability) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; . . . ."

Definitions (1) and (3)

"Insured—under coverages A, B, C and M the unqualified word 'insured' includes

(1) the named insured, and

. . . .

(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse,

. . . ."

In January, 1969, Cathren McBride, the mother of Michael and the sister to Emma Jean Braden, was having some problems with her family, which consisted of Michael and three other children. Mrs. McBride, who was having trouble with Michael about non-school attendance, requested that Emma Jean and her husband talk to him. After the Bradens talked to Michael, he decided to live with them and to get a job to help his mother. Originally, in some earlier conversations, the Bradens wanted to adopt all of Cathren's children, but Cathren refused permission.

When Michael moved in with the Bradens in late January, 1969, he was treated as a member of the family. He did not pay room and board; he ate with the family; his aunt did his laundry; he shared a room with his cousin, Joseph A. Braden; he enjoyed the same privileges as the other Braden children; and he was subjected to the same disciplinary rules.

Through Joseph, Michael obtained a job at Steak 'n Shake in February, 1969, where he worked until his death. Daily one of the Bradens or a neighbor would take Michael to and from work. Michael sent his mother fifteen dollars per week, which he would give to his aunt, and she would mail a check.

In order to complete his high school requirements, in August, 1969, Michael enrolled in a correspondence course. Mr. Braden signed as his guarantor on the contract. The Bradens testified that Michael never indicated an intention to return home or to his old high school. During the months he lived with the Bradens, he visited with his mother about six times.

Mrs. McBride testified that Michael's stay with the Bradens was only temporary and had always been so intended. She also testified that Michael intended to return to his old high school in September, but since school started in the middle of the week, he decided to finish out the week to get a full pay.

While returning from a double date, September 13, 1969, as a passenger in the automobile operated by Joseph, Michael was killed in an automobile accident. Other evidence, if needed, will be given during the course of the opinion.

Defendant Cathren C. McBride contends that the trial court committed error in two regards: (1) the policy's household exclusion was ambiguous, and should be interpreted most favorably to Michael McBride so as to provide coverage; and (2) that Michael McBride was not an insured within the meaning and definition of State

Farm's policy of insurance, because he was not a resident in the household of the named insured.

■ First, we take up defendant Cathren C. McBride's claim that the policy provision excluding coverage to "members of the family residing in the same household" is ambiguous. Our Supreme Court has looked at this identical household clause on at least three recent occasions. And in no instance has found it to be subject to the criticism now being levelled. Nor must we pervert language to create ambiguity where none exists. We rule this point against defendant Cathren C. McBride. State Farm Mutual Automobile Insurance Co. v. Ward, Mo., 340 S.W.2d 635; Kelso v. Kelso, Mo., 306 S.W.3d 534, 71 A.L.R.2d 258; and Gabel v. Bird, Mo., 422 S.W.2d 341.

■ Next, we consider the crux of this appeal, that is, the question of where was Michael residing at the time of his death. In a case of this nature, our duty is to review the case de novo, weigh the competent evidence, and reach our own conclusion as to the facts; yet, at the same time, give due deference to the opportunity of the trial judge to judge the credibility of the witnesses. Craft v. Politte, Mo., 454 S.W.2d 534; Nahm v. Nahm, Mo.App., 477 S.W.2d 713, 715.

The trial court found:

" '6. Michael McBride was born on October 17th, 1952, was a nephew of Emma Jean Braden, that is, the son of Mrs. Braden's sister, the defendant Cathren C. McBride. Michael McBride moved into the Braden household in January, 1969, and continued to live there until his death on September 13th, 1969.

" '7. Michael McBride established the Braden home as his residence and on September 13th, 1969, was living there with his uncle and aunt, Paul and Emma Jean Braden, as a member of their household and subservient to them.' "

Defendant McBride's argument is that the trial court misunderstood the evidence. She insists that the evidence showed Michael's stay with the Bradens was temporary, and lacked the permanency necessary to make it a residency.

■ Two cases containing helpful definitions are Kelso v. Kelso, supra, and Clarkson v. MFA Mutual Ins. Co., Mo. App., 413 S.W.2d 10. The Clarkson case defines "residence" (1) a physical presence and a degree of permanency. In discussing the latter requirement the court said:

"* * * But in whatever context the latter terms (residence and domicile) are used, they almost invariably imply and connote 'something of permanence or continuity at least for an indefinite period, to the exclusion of another contemporaneous residence' that is, 'intended permanency * * * not in the sense that the residence must never be changed, but in the sense that there is no intention to change it.' * * *"

In other words the degree of permanency necessary is an intention to remain indefinitely. So, if Michael was living with the Bradens and had no intention to leave, he was a resident of their household. We determine his intentions from both his acts and utterances. State Farm's evidence was that not only would he not leave the Bradens but also he would run away rather than return to his mother. Also, the records of the Missouri Welfare Department (McBride's exhibit) showed that ten days before her son's death, Mrs. McBride told her social worker that Michael was disruptive and a bad influence upon her other children and she would not permit him to return home. Granted there was evidence to the contrary, but the trial court resolved these conflicts, which we will not set aside unless clearly erroneous. Craft v. Politte, supra. Accordingly, we hold that Michael was physically present in the Braden home, and from the evidence the trial court could reasonably find within the

meaning of the Clarkson case, supra, that was an intended permanency.

But even more conclusive than statements were the facts from which the trial judge could and did reasonably find that the Braden home was one domestic establishment under one management. Mission Insurance Co. v. Ward, Mo., 487 S.W.2d 449 dated Dec. 12, 1972. See also Johnson v. State Farm Mutual Auto Insurance Co., 252 F.2d 158 (CA Mo.), where household is defined as a collective body of persons residing together in one house upon the same premises as one domestic establishment. Here we find (1) Michael left his mother and was living with the Bradens from January, 1969, until his death in September, 1969; (2) he worked full time and was taken to and from work daily by a member of the Braden household; (3) he was treated as a member of the family, that is, he paid neither room or board; his aunt did his laundry; he ate with the family and shared a room with his cousin Joseph; (4) he was subjected to the rules and regulations of the Bradens; (5) he enrolled in a correspondence course, and his uncle guaranteed the account; and (6) finally, on his life insurance provided by his employer, he named his uncle as his beneficiary without the uncle's knowledge. We hold that at the time of Michael's death that there had been a complete integration of his life into the Braden family unit, and that his social intercourse was merged with that of the Braden domestic circle, and he was subservient to the head of the Braden family. Therefore, we conclude that Michael McBride was living with the Bradens as a member of their household and that his death was excluded from coverage under State Farm's policy exclusion (1). We further find that the trial court's finding to the above effect was reasonable and supported by the evidence.

Judgment affirmed.

DOWD, C. J., CLEMENS, J.; and VERNON MEYER, Special Judge, concur.