**Gregory WATT, by his next friend, Kevin WATT, Appellant,**

v.

**James MITTELSTADT and Jane Mittelstadt, Defendants,**

and

**American States Insurance Company, Garnishee-Respondent.**

**No. WD 35841.**

Missouri Court of Appeals,
Western District.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied June 25, 1985.

Christopher E. Atteberry, John B. Ewing, Kansas City, for appellant.

Joseph A. Sherman and David S. Baker, Kansas City, for American States Ins. Co.

Before TURNAGE, C.J., Presiding, and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a civil action in garnishment. The appeal is taken from a judgment quashing the garnishment. The judgment is affirmed.

Some preliminary remarks are in order to reveal the events which led to the present proceeding. On or about November 5, 1981, James and Jane Mittelstadt visited the home of Mr. and Mrs. Kevin Watt. The Watts have a minor son, Gregory. At the time, Gregory was four years old. The Mittelstadts had a dog named "Budweiser" who accompanied them to the Watts home. During the visit, Budweiser attacked and injured Gregory. Gregory Watt, by his natural father as next friend, brought suit against James and Jane Mittelstadt, which by default resulted in a $50,000.00 judgment. The Watts then sought satisfaction of the judgment by the instant proceeding, naming as garnishee the American States Insurance Company.

Appellants (hereinafter the Watts) present two points on this appeal, which in summary charge that the trial court erred because (1) the policy of insurance contains the term "household" which is an ambiguous term and being such, the same should be construed against respondents, and (2) the trial court erred in its entry of findings of fact.

This matter was tried to the court upon a waiver by both parties of a trial by jury. Thus, review is within Rule 73.01 as that rule has been interpreted by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

Both parties filed motions for summary judgment and the matter was tried to the court following the overruling of both parties' motions. The following, in summary, are the pertinent facts developed upon the record.

At the time of injury to Gregory Watt, James and Jane Mittelstadt (hereinafter James and Jane) resided in an upstairs apartment at 2528 Race, Independence, Missouri. The remaining or downstairs area of the 2528 Race residence was occupied by Julius and Norma Mittelstadt (here-

inafter Julius and Norma), who are the natural parents of James and the mother-in-law and father-in-law of Jane. Julius and Norma have occupied the residence since 1946. They raised five children in the home. Their children grew and left the home. James was the youngest child and he too left the family residence.[1] Following the departure of James, Julius and Norma contemplated the renovation and conversion of the upstairs area to an apartment for rental income purposes. James and Jane later married and expected a child. Julius and Norma then made the planned changes to the upstairs area and James and Jane moved into the apartment.

It was agreed between Julius and Norma and James and Jane that as rent, James and Jane would pay a portion (approximately 25–30%) of the monthly utility costs and they would perform any necessary construction and/or maintenance on the property. The evidence revealed that the upstairs apartment was self-contained. It had its own bedroom, kitchen, bathroom, and entrance from the outside. There was also a driveway/parking area available to accommodate the upstairs apartment. The area is zoned R–2, allowing for multiple dwellings.

The evidence also revealed that the day-to-day activities and behavior of James and Jane were independent of Julius and Norma and vice versa. The two families only ate meals together on holiday or special occasions. Any family decisions between the two couples were made independent of and not interdependent upon each other. Each couple secured its own income and planned and disbursed its monies for living expenses and all other expenditures. No economic decisions were interdependent between the two couples.[2] The meals, cleaning of the living area, laundry and all other day-to-day week-to-week family functions were performed by each couple to the exclusion of decision and participation by the other couple.

Julius and Norma had a homeowners policy on the residence. That policy contained the following provision:

" 'Insured' means you and the following residents of your household:

a: your relatives [3]

b: any other person who is in the care of any person named above ..."

The policy goes on to state, "Throughout this policy 'you' and 'your' refer to the 'named insured' ... and the spouse, if a resident of the same household and 'we' and 'us' and 'our' refer to the Company providing this insurance."

In pursuit of this garnishment action, the Watts, by their evidence, attempted to establish that James and Jane were within the "household" provision and thus named insureds within the policy.

At the close of the evidence, the trial court entered factual findings and ruled that there existed two "households" independent of each other and thus, James and Jane were not insureds under the terms of the policy. The garnishment was quashed. This appeal followed.

Before addressing the two alleged errors by the Watts, it is noted that the parties agree that the courts of our state have not heretofore interpreted the term "household" as that term is used within the so-called "homeowners" insurance policy. The instant case is a case of first impression within our state to directly take up the issue and to rule it.

Under point (1), the Watts charge that the term "household", within insurance policy, is an ambiguous term and being such, should be construed against the respondent

---

1. At the time of trial, another son, John, who had received an injury, had returned home and was living with Julius and Norma in the downstairs area.

2. On one occasion, James and Jane's automobile was destroyed in a flood. Pending reimbursement, Julius and Norma loaned James and Jane $800.00 to secure another vehicle. The transaction was a loan which was promptly repaid by James and Jane.

3. There is no dispute between the parties that Julius and Norma and James and Jane are relatives.

insurance carrier and the trial court erred in not so holding.

In support of their asserted error, the Watts state a basic principle of law applicable to terms within insurance contracts, to wit, when an ambiguity exists concerning a term within an insurance policy, that term is to be given a broad interpretation to extend coverage and not so as to narrow coverage, and thus such terms are to be construed against the carrier because the carrier was the drafter of such term. This principle rests upon the concept that the average insured does not possess the expertise, etc., when compared with an insurer; plus if an exclusion is to be claimed, then the insurer or carrier could and should have so worded the policy. See *Giokaris v. Kinkaid*, 331 S.W.2d 633, 639 (Mo.1960) and *Varble v. Stanley*, 306 S.W.2d 662, 665 (Mo.App.1957).

In support of their argument, the Watts cite to this court the following as authority for their declared position that the term "household" is ambiguous. Ironically, the Watts first refer or cite to *State Farm Mutual Automobile Insurance Co. v. McBride*, 489 S.W.2d 229 (Mo.App.1972), which was a case wherein a mother sought recovery of damages for the death of her son killed while a passenger in the McBride vehicle. The facts revealed that the deceased son, because of his personal behavior and less than favorable relationship with his mother, had taken up residence with his aunt and uncle. The court ruled against the mother, holding that under the particular facts and circumstances, the deceased son had been "integrated" into the family of the aunt and uncle and was thus an insured within the policy. Recovery was denied. Thus, recovery in *McBride* was denied because the deceased son was found to be an insured and thus within the exclusion clause.

The Watts contend that *McBride* does not control. They discuss the three cases referenced by the court in *McBride* to support their argument. These cases are *State Farm Mutual Automobile Insurance Co. v. Ward*, 340 S.W.2d 635, 639 (Mo.1960), which was an action for declaratory judgment seeking enforcement against the carrier to defend claims presented against a decedent's estate for injuries claimed resulting from an automobile collision. The Supreme Court of Missouri declared that coverage of an insured is not void as against public policy. The Court went further and considered the appellant's contention that the exclusion clause was ambiguous because it did not "clearly state when the members of the family must be residing in the same household with the insured to avoid coverage." The Court answered the question by holding that residing with the insured meant at the time the injury occurred.

The Watts seized upon the following within the *Ward* decision: "In view of the alleged ambiguity it is said that 'the clause should be construed most strongly against State Farm ...'" *Ward* at 639. From this, the Watts argue the application of the broad principle that ambiguity creates coverage. The Watts further argue that the *Ward* decision did not "construe the term 'household' in the context of what constitutes a 'household' which is an issue in the case at bar." It is the further contention of the Watts that in *Ward*, the Missouri Supreme Court merely answered the question of "when the clause was effective ..."

The Watts also direct this court's attention to the case of *Kelso v. Kelso*, 306 S.W.2d 534 (Mo.1957), which was a garnishment proceeding against a carrier which resulted in the discharge of the carrier garnishee by the circuit court, but which was reversed and remanded by the Supreme Court. The Watts again seize upon language within a decision, in this case, to wit, "We [i.e., the Missouri Supreme Court] are not asked to construe the policy provision." *Kelso* at 536. They then conclude that the Supreme Court held that the term "household" is a question of fact and not law. More accurately, the rationale upon which the reversal and remand were ordered in *Kelso* was that the trial court had not developed any facts or filed any memorandum ruling the facts in *Kelso*, so the

Supreme Court could not rule the question. It was upon this basis that the case was returned to the trial court.

The third and final case cited to this court by the Watts, within *McBride,* is *Gabel v. Bird,* 422 S.W.2d 341 (Mo.1967), which also was a garnishment proceeding against an insurer under an automobile insurance policy. In *Gabel,* there was, upon the record, an admission that the deceased was a resident of the insured's household. It is the position of the Watts that the controversial issues involving the term "household" were never reached. It must be noted that the Supreme Court ruled for the carrier.

The reasoning offered up by the Watts in citing to *Ward, Kelso,* and *Gabel* is to further argue that *McBride,* in relying upon the three previous rulings, thus provides a limited precedent for a ruling that the term "household" is unambiguous as a matter of law. They point out also the difference in the types of policies in *McBride* versus the instant case.

There is no question that the precise wording of the applicable provisions within the policy in *McBride* and the policy in the instant case is not identical. In *McBride,* the pertinent provision reads:

"Insured-under coverages A, B, C and M the unqualified word "insured" includes

(1) the named insured, and ...

(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse"

The foregoing is contrasted with the provision within the policy in the instant case:

"Insured means you and the following residents of your household:

(a) your relatives

(b) any other person who is in the care of any person named above."

As regards the issue of whether the term "household" is ambiguous, which is the issue before this court in the instant case, the above-offered comparison by the Watts concerning policy language is of no import. Both policies directly reference the term "household" and within the confines of discussing and ruling the issue of the ambiguity or unambiguity of the term "household", there is no essential difference between the two policies.

The essential facts found in *McBride* have been set forth above and do not need to be repeated. What is of importance in *McBride* is the court took up and gave full consideration to the facts of the case and concluded that "Michael McBride was living with the Bradens (his aunt and uncle) as a member of their household and that his death was excluded from coverage ..." *McBride* at 233. The court in *McBride* discussed the "residency" of the deceased within the home of the aunt and uncle and ruled that residency was determined by his physical location, the disclaimer or refusal of his mother to allow his return to her home, the fact that decedent would run away if returned to the mother, and the control over the deceased by the aunt and uncle. Other evidence established that the deceased took his meals with the aunt and uncle's family, shared a room with his cousin, and was subject to the discipline asserted by the aunt and uncle. The Court discussed residence as being also dependent upon the "degree of permanency necessary in an intention to remain indefinitely." It is also revealed that the Court in *McBride* found "helpful" the definitions set forth in *Kelso.* It cannot be concluded, however as the Watts contend, that the Missouri Supreme Court did not hold that the term "household" is unambiguous. The ruling in *McBride,* without specifically so stating, did just exactly that!

However, as noted above, the term "household" has not been construed as applied to "homeowners policies". Thus, the ruling in *McBride* might be considered by some and certainly that is the position of the Watts herein, as not applicable to "homeowners" policies.

This court, not being provided or being able to locate in its own research any Missouri cases, either determining the issue or even aiding in the determination thereof, has looked to other jurisdictions for insight

to the issue. The parties herein are correct and this court agrees there is no Missouri authority upon the precise issue.

The respondent has directed this court to *McBride*, which they contend controls. This court has already indicated why it was felt necessary to do additional research on the issue. In this regard, respondent has cited to this court authority from foreign jurisdictions. This court is first referred to *Stadelmann v. Glen Falls Insurance Co. of Glen Falls*, 5 Mich.App. 536, 147 N.W.2d 460 (1967), which was a claim under a "homeowners" insurance policy for the recovery of money as the value of personal property stolen from the insured's automobile. The insured's sister was a resident of Germany and while on a visit to the home of the insured (her brother), the parties toured the New England area by automobile and trailer. While in New York the trailer was unhitched and the automobile driven to another location. The automobile was broken into and some of the sister's personal property stolen. The Michigan Court, while denying coverage and hence liability on the part of the insurance carrier, also declared that where the facts are undisputed "the question of whether plaintiff was a resident of her brother's household was and is one of law." In addition, the Michigan court held, "We rule that the term 'resident of household' is not ambiguous, and as applied to the facts of this case, does not include a relative who is part of another household and a resident of a foreign country." This same court relied upon *Indemnity Insurance Co. of North America v. Sanders*, 169 Okla. 378, 36 P.2d 271, 273 (1934) which declared that persons who dwell together as a family constitute a "household". The Michigan court relied upon the definition of the term "resident" as defined both within *Webster's New International Dictionary* and *Black's Law Dictionary*. These define resident as:

Websters: "Dwelling or having an abode, for a continued length of time ... one who resides in a place; one who dwells in a place for a period of more or less duration. Residence usually implies more or less permanence of abode, but is often distinguished from inhabitant as not implying as great fixity or permanency of abode."

Blacks: "One who has his residence in a place."

The Michigan Court also referred to the definition of "household" given in *Blacks Law Dictionary* and used by the courts of Utah in *Schurler v. Industrial Commission*, 86 Utah 284, 43 P.2d 696 (1935). That definition states, "Household. A family living together. (cite omitted). Those who dwell under the same roof and compose a family. Webster. A man's family living together constitutes his household, though he may have gone to another state."

Thus, while the court in *Stadelmann* considered "residence" as a factor in determining "household", it was not considered, nor, as it will be shown infra, is it to be considered as the only or exclusive factor to define or determine a "household". The *Stadelmann* ruling is important to the instant case because of its declaration that the term "household" is not an ambiguous term for insurance policy purposes and it restates the basic principle that when facts are undisputed, the question of one's membership within a household is a question of law to be decided by the courts.

This court has been further referred to *Firemen's Insurance Co. of Newark, N.J. v. Viktora*, 318 N.W.2d 704 (Minn.1982), also a case involving the term "household" within a homeowners policy. In *Viktora*, the Minnesota Supreme Court ruled that the 23-year-old son of the insured was a "resident of the insured's household" within the terms of the policy. The son had moved from his parent's home and taken up residence in another town. He later was without employment due to an employee's strike. He returned to the home of his parents. He did not move his household belongings (i.e., appliances, etc.) but brought certain personal property and his clothing. He ate all of his meals with his parents, paid no rent but did family chores, his mother did all of his laundry, and he received his personal mail at his parent's

home. He resided with his parents some four months during which the alleged injury to the original claimant occurred. The Minnesota court, in ruling that the son was a resident of the insured's household, and thus the carrier had to provide coverage, held, "This court has generally encompassed the first two *Pamperin* [4] factors by defining 'household' in its common and ordinary meaning 'for insurance purposes as generally synonymous with "family" and as including those who dwell together as a family under the same roof.'" The Minnesota court held the term "household" not to be ambiguous. It found from the facts in *Viktora* that the son was a member of the insured's household. It must be noted that the Minnesota court acknowledged the financial dependency of the son upon the parents.

This court is referred to *Iowa National Mutual Insurance Co. v. Boatright*, 516 P.2d 439 (Colo.App.1973), another case involving the term "residents of his (the insured's) household" within a homeowners insurance policy. The parents of the insured's wife took up residency in the daughter's home for the express purpose of caring for the grandchildren during the daughter's period of hospitalization and convalescence. The length of stay or duration of the parent's living in the daughter's home was not predetermined and they agreed to stay as long as necessary. The grandparents had "full run of the house", they purchased and prepared food for the grandchildren and themselves and performed repairs to the house. The grandfather was cleaning paint brushes following some maintenance. A fire occurred, resulting in the grandfather's death. Iowa National paid the losses, then as subrogee sought recovery against the estate of the deceased grandfather. The Colorado court, in allowing recovery, held that the intention of the parties that coverage would extend

to an alleged insured, is an important factor in determining if one is a resident of an insured's household. The Colorado court also cited with approval *Pamperin v. Milwaukee, supra.*

Another offered reference is *Miller v. United States Fidelity and Guaranty Co.*, 127 N.J.Super. 37, 316 A.2d 51 (App.Div. 1974), which was an action upon a homeowner's insurance policy. The case also involved the term "a resident of the insured's household." A fire had been caused by a nine-year-old boy while he was visiting his father. The parents had divorced and the custodial decree placed the custody of the boy with his mother. Both parents had remarried and established independent households. The father exercised his visitation rights regularly and the boy was picked up each Saturday and remained with the father until his return on Sunday. While with the father, the boy was given certain chores, which included burning the trash. He started a fire in the plaintiff's barn and plaintiff sued the boy and his natural parents to recover his loss. Neither insurance carrier for the parents would defend them. A consent judgment was entered against the boy. Plaintiff then sued Cumberland Insurance Co. (the mother's carrier) and U.S.F.G. (the father's carrier) alleging that both policies provided coverage. The trial court ruled that only the Cumberland policy provided coverage, reasoning the boy could not live in two places and that both his domicile and residence were with his mother. Cumberland appealed. The reviewing court, in reversing and thus holding that both carriers were to provide coverage, ruled that while a person can have only one true domicile, he can, for insurance coverage purposes, have more than one residence. The court also ruled the custody decree was not determinative of the issue as to his residence for the purpose of his being a resident of

**4.** Term used by the Minnesota court is from the Wisconsin Supreme Court case of *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972) which in its determination of residence within the insured's household ruled that (1) "Living under the same roof" and

(2) "in a close, intimate and informal relationship" were factors to be considered. There was a third factor concerning the duration of the relationship which the Minnesota court found not particularly applicable in *Viktora*.

the insured's household for insurance coverage purposes.

Another referenced cite, *Hernandez v. Comco Insurance Co.*, 357 So.2d 1368 (La. App.1978), was a case involving a homeowners insurance policy wherein the question was whether a person was, for purposes of insurance coverage, a resident of the insured's household. The plaintiff sustained burns as a result of the explosion of crawfish boiling equipment. The injuries occurred at the home of one Lonnie Hernandez on premises owned by Alvin Pellegrini, Lonnie's father-in-law. The legal question presented was whether the policy covered the negligent acts of the son-in-law. The Pellegrinis owned property which had upon it two dwellings. Lonnie and his wife, the daughter of the Pellegrinis, dwelled in one of the houses. The Louisiana Court held that the two households were independent. It further based its reversal upon a finding that the policy in question provided coverage to the named insured, his spouse, and relatives of either and any other person under the age of twenty-one in the care of any insured. The court quickly resolved the matter of "relative" ruling upon supporting authority that relative included all relationships, whether by blood or marriage. In considering the term "household", the court held, "The problem of defining the word 'household' has been faced by innumerable courts with no clear or easy resolution (cited reference omitted). Ultimately, whether a person is a member of a given household is a question of fact, to be determined after consideration of all the circumstances. Then the Louisiana Court stated:

"Webster's Third New International Dictionary (1971) defines 'household' as 'those who dwell under the same roof and compose a family; a domestic establishment; specifically, a social unit comprised of those living together in the same dwelling place.' Black's Law Dictionary (4th ed. 1957) defines it as a 'family living together; those who dwell under the same roof and compose a family.' However, living technically 'under the same roof' has been found not to be

essential. *See Taylor v. State Farm Mutual Auto Ins. Co.*, 248 La. 246, 178 So.2d 238 (La.1965); *Vinet v. Hano*, 281 So.2d 183 (La.App. 4th Cir.1973), *writ refused* October 12, 1973; *Fidelity and Casualty Company of New York v. Jackson*, 194 F.Supp. 431 (E.D.N.C.1961) and citations therein.

Perhaps the most appropriate definition of 'household' was set forth by the court in *Leteff v. Maryland Casualty Co.*, 91 So.2d 123 (La.App. 1st Cir.1956):

'Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness."' 91 So.2d at 130.

The pattern which emerges from the myriad of decisions considering the term 'household' seems to be an emphasis on dwelling as a family under one head. Here there existed two distinct families, dwelling apart. The testimony in the record discloses that all parties involved considered themselves as two independent family units. Clearly, Mr. Pellegrini was not the head of Lonnie Hernandez' household, nor were Lonnie Hernandez and his wife part of the Pellegrini household. This is the same conclusion reached by the trial court and we believe there is substantial evidence in the record to support his conclusion, which will not be upset. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

In the case of *Buxton v. Allstate Insurance Co.*, 434 So.2d 605 (La.App.1983), also cited to this court, it was ruled that, for purposes of determining whether a person is an insured within the policy, "living technically 'under the same roof'" has not been found to be essential (citations omitted). *Buxton* at 611. The court went on, however, and adopted what it considered the

most appropriate definition of the term "household" found within *Leteff v. Maryland Casualty Co.*, 91 So.2d 123 (La.App. 1956). The court in *Leteff* stated,

"'Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character under one roof; a "collective" body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'" *Buxton* at 611, quoting from *Leteff* at 130.

From a general reference, the term "household" has been defined as:

"HOUSEHOLD.

### As a noun

The word is one of well-known legal meaning, being the definition of the Latin word 'familia.' It has been variously defined, depending to some extent on the connection in which it is used; and may mean a domestic establishment, a family, a number of persons dwelling under the same roof and composing a family; and, by extension, all who are under one domestic head; a group of persons living together; the members of a house collectively; an organized family and whatever pertains to it as a whole; persons who dwell together as a family; also the place where one holds house, his home.

The term has been held synonymous with 'family,' and also has been distinguished therefrom see 35 C.J.S. p. 743 notes 11, 13." 41 C.J.S. House-Household (1944)

As a further argument, the Watts direct this court's attention to *Cobb v. State Security Insurance Co.*, 576 S.W.2d 726 (Mo. banc 1979), which includes the following declaration:

" 'Household' is a chameleon like word. The definition depends on the facts of each case. It is difficult to deduce any general principles. One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary. *Mission Insurance Company [v. Ward]*, 487 S.W.2d [449] at 451 [(Mo.1972)]; *Giokaris*, 331 S.W.2d at 641. The other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management. See *Automobile Club Inter-Insurance Exch. v. Tonkins*, 509 S.W.2d 802, 805 (Mo.App.1974); *State Farm Mutual Automobile Ins. Co. v. McBride*, 489 S.W.2d 229, 233 (Mo.App. 1972).

Although for different purposes the meaning of the word may differ, 'household' is a word to describe a close relationship, varying in detail, where people live together as a family in a closely-knit group, usually because of a close relationship by blood, marriage or adoption and who deal with each other informally and not at arms length. *National Farmers Union Property & Cas. Co. v. Maca*, 26 Wis.2d 339, 132 N.W.2d 517, 521 (1965); Note, 26 Drake L.Rev., *supra*, at 830)."

The court then ruled that the illegitimate status of the deceased minor daughter did not bar recovery by her natural parents under the uninsured motorist portion of an automobile policy.

The Watts further refer this court to *Giokaris v. Kincaid*, 331 S.W.2d *supra* at 641, which declared, "The word 'family,' synonymous with 'household,' is of varied signification and may have a narrow or broad meaning."

From the above authorities, the Watts then conclude that with the diversity of definition of the term "household" it follows that the term is ambiguous.

Contrary to what is asserted by the Watts, what this court observes from the above authorities *is not* that the term "household" is ambiguous and thus capable of two or more interpretations, *but* rather these authorities reveal a struggle of determining whether, under a prescribed set of

facts an individual is an insured or not within the terms of any insurance policy.

The Watts further reference *American Family Mutual Insurance Co. v. Brown*, 657 S.W.2d 273 (Mo.App.1983), a case from this court dealing with the term "resident of the same household" within an exclusionary clause of an automobile insurance policy. In *Brown*, this court referred to *Cobb* and *Giokaris* in its discussion of the term "household". Again, this court in *Brown* restated the problem, i.e., the determination of that issue must start with an acknowledgment that "resident of the same household" is a phrase subject to variable interpretation *depending on the facts of each particular case*. Thus, again what is illustrated is the struggle courts face in determining in each case whether a person or persons are insureds and thus within a certain policy provision.

What has occurred is the focus by our courts upon the disposal of a particular case from and upon the facts of each case and not the setting forth of any definition of the term "household". As the various authorities are read and considered, it is readily observable that attention to and concern with the term "household" has been to justify or explain the results reached in those cases. Perhaps in those cases the courts were never asked, nor was the real issue in those cases the setting forth of any definition of the term "household". That issue is presented squarely herein.

▋ Thus, it is herein declared that the term "household" is found to be a term which is not ambiguous within and for the purposes of "homeowners" insurance policies. The term "household" is hereby defined by this court as follows:

> The term "household" as that term is expressed and to be made use of within insurance contracts shall mean a collection of persons, whether related by consanguity or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single

curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness.

A word of caution is needed at this point. The above definition only relates to the term "household" and there should be no misunderstanding that if any insurance contract by its wording restricts coverage to persons related to the insured, then such terms as relative, relation, or related to are words of restruction applying to a relationship between the insured and others based upon consanguity or affinity. Stated another way, if the term "relative" is used within any insurance contract, then coverage shall extend only to those persons within the "household" related to the insured by consanguity or affinity. The same shall apply to those persons within the "household" who are in the care of the insured or any relative of the insured.

▋ There is no need to restate the facts depicting the activities and relationship between Julius and Norma and James and Jane. It suffices to declare that the evidence unequivocally reveals two independent "households" between the two couples.

Point (1) is ruled against the Watts.

Under point (2), the Watts make a direct challenge to specific findings of fact entered by the trial court.

The Watts assert that the record fails to reveal substantial evidence to support the following specific findings of fact: (a) the existence of two separate and distinct households, (b) that the upstairs apartment has its own separate and distinct entrance, (c) that the two households are financially independent of one another, (d) that the James Mittelstadt "household" pays for one-half of all utilities, (e) that the two families do not share meals, (f) that the two "households" are not under a single management, (g) that each household attempts to refrain from interfering with the other and (h) that there was not an integration of the two families.

This court has reviewed the transcript in this case with specific awareness of the above-challenged findings of fact. It serves no purpose to set forth in detail the evidence which disproves the Watts' assertions. It suffices to state that the record contains substantial evidence in support of each of the trial court's findings.

The judgment of the trial court was not against the weight of the evidence, there is substantial evidence to support it, and the judgment neither erroneously declares nor applies the law. Rule 73.01, *Murphy v. Carron, supra.*

The judgment is in all respects affirmed.

All concur.