Jason PRUITT, Plaintiff–Appellant,

v.

FARMERS INSURANCE COMPANY, INC., Defendant–Respondent.

No. 21248.

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 1997.

Motion for Rehearing or Transfer
Denied Aug. 20, 1997.

Application to Transfer Denied
Sept. 30, 1997.

---

David W. Ransin, Springfield, for Plaintiff–Appellant.

Randy R. Cowherd, Tamara Flikkema de Wild, Springfield, for Defendant–Respondent.

GARRISON, Judge.

This is a declaratory judgment action in which Jason Pruitt (Jason [1]) sought to establish himself as an insured under automobile insurance policies issued to his uncle by Farmers Insurance Company, Inc. (Farmers). On this appeal, Jason contends that the trial court erred in entering a summary judgment in favor of Farmers. We reverse and remand.

1. We refer to Jason and some of his family members by their first names for purposes of clarity. No disrespect is intended.

Jason was seventeen years old in the summer of 1991 when he traveled from his parent's home in Copperas Cove, Texas to the home of his uncle and aunt (David and Vicki Brock) in Monett, Missouri in order to help David haul hay. According to the deposition testimony of Jason's mother, the primary purpose of the trip was to separate Jason from his girlfriend. Jason left Texas by plane on June 9, 1991, intending to stay in Missouri until the hay hauling was completed. His round-trip ticket called for him to return to Texas on July 12, 1991, but his father said that the July 12 date had been selected at random in order to obtain a round-trip fare which was cheaper, and it was their understanding that the return date could be changed.

Affidavits and deposition testimony presented to the trial court in connection with Farmers' motion for summary judgment indicated that it was not contemplated that Jason was moving to Missouri permanently, but he could have done so if he desired. Jason was enrolled to attend high school that fall in Copperas Cove where he intended to play football, but there was some discussion about him possibly staying in Missouri and going to school here during the following year. When he came to Missouri he brought some of his clothing, toilet items, a hat and a picture of his girlfriend, but left his other personal items in Texas. Jason had obtained his Texas driver's license approximately two weeks before leaving for Missouri, and testified in his deposition that he did not intend to stay permanently in Missouri.

On June 15, 1991 Jason was seriously injured in an automobile accident in Newton County, Missouri while riding as a passenger in an automobile operated by a friend. The insurance policy covering the operator and the automobile provided for liability coverage of $25,000. The Brock's, however, had five policies issued by Farmers, each of which provided uninsured motorist coverage, describing an uninsured motor vehicle as one on which the liability coverage was less than the limits of the uninsured motorists cover-

age provided by the Brock's policies. They also included coverage for medical expenses.

The policies issued to the Brocks each provided that an insured included a "family member," defined as "a person related to (the named insured) by blood, marriage or adoption who is a resident of (the named insured's) household." The trial court sustained Farmers' motion for summary judgment on the theory that Jason was a resident of Texas at the time of the accident, and therefore did not qualify as a "family member" under the definitions in the policies. Each of Jason's three points relied on in this appeal relate to the validity of that finding.

The criteria for reviewing a summary judgment on appeal are no different than those which should be employed by the trial court in ruling such motions. *Southard v. Buccaneer Homes Corp.*, 904 S.W.2d 525, 528 (Mo.App. S.D.1995). The question of whether a summary judgment is proper is purely an issue of law founded on the record submitted. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We review the record, however, in the light most favorable to the party against whom the judgment was entered and accord that party the benefit of all reasonable inferences. *Id.* "In addition to determining whether any genuine issue of material fact exists which requires a trial, we also review whether the trial court's ruling was correct as a matter of law." *Southard v. Buccaneer Homes Corp.*, 904 S.W.2d at 529.

In his first point on this appeal, Jason contends that the summary judgment was erroneously entered because there were genuine issues of fact concerning whether he was a "resident" of the Brock household at the time of his injury.[2] In support, he correctly points out that pursuant to Rule 74.04 a movant must establish a right to a "judgment as a matter of law," and insofar as that right depends on the presence or absence of certain facts, the movant must also establish that there is no genuine dispute about those material facts. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d at 380. Because Farmers was a defending party in the

---

2. The issue presented by the parties relates to the term "resident." There is apparently no issue

about whether he was a part of the Brock "household."

instant declaratory judgment suit, it was not necessary that it controvert each element of Jason's claim so long as it made a showing that negated *any one* of the facts necessary for one of the elements of his claim. *Id.* at 381.

■ In his second point, Jason contends that the term "resident" is ambiguous, thereby requiring that the policies be interpreted broadly in favor of providing coverage. We consider these closely related points in conjunction with each other.[3]

In entering the summary judgment the trial court held that there were no genuine issues of material fact concerning Jason's residence, and that Farmers was, therefore, entitled to a judgment as a matter of law. In explaining its ruling, the trial court referred to *Clarkson v. MFA Mutual Insurance Co.*, 413 S.W.2d 10 (Mo.App. S.D.1967) and said:

> "I am convinced that the term 'residence' is not ambiguous and that Jason Pruitt remained a resident of Texas because he intended to return there. As in Missouri, he did not 'intend permanency * * * not in the sense that the residence must never be changed, but in the sense that there is no intention to change it.' Jason Pruitt did reside in Missouri for the moment, but clearly intended to return to Texas."

The *Clarkson* case involved a claim by plaintiff for expenses incurred for his step-daughter under the medical payments coverage of his automobile liability policy. The policy provided for reimbursement of medical expenses for the named insured (plaintiff) and each "relative" who sustained bodily injury caused by accident while occupying an automobile. It defined "relative" as "the spouse of the named insured and any relative of the named insured or spouse who is *a resident of and actually living in the same household as the named insured.*" Prior to the end of the school year, the step-daughter lived in plaintiff's home. On May 27, 1963, when school ended, she went to work at a resort twenty-five miles away where she stayed while working. She was injured in an automobile accident on July 27, and the issue

was whether, at the time of the accident, she was a resident of plaintiff's household as required by the policy. The plaintiff contended that the policy definition of relative was ambiguous; that his step-daughter was unemancipated and on a temporary sojourn from home during the summer vacation; and that she was a relative under the policy definition.

In *Clarkson* the trial court agreed with plaintiff and entered a judgment for the limits of the medical pay coverage under his policy. The appellate court affirmed the judgment on appeal, saying that the trial court could have found that the place where the step-daughter was staying that summer was nothing more than a "temporary place of abode" and that she continued to be "a resident of and actually living in the same household" as plaintiff. *Id.* at 15. In doing so, however, the court said that "we must regard the terms 'reside,' 'resident' and 'residence' as ambiguous, elastic and relative ...," but said that there was no need for it to attempt to define those terms. *Id.* at 13. The court also said that at common law the terms "domicile" and "resident" or "residence" were used interchangeably and that the latter two terms are frequently, "although not always," used in that sense. *Id.* The court reasoned that in whatever context the terms "residence" and "resident" are used, "they almost invariably imply and connote *'something of permanence or continuity at least for an indefinite period,* to the exclusion of another contemporaneous residence' ..., that is, *'intended permanency * * * not* in the sense that the residence must never be changed, but in the sense that there is no intention to change it.'" *Id.* The court concluded that under the evidence the trial court was not clearly erroneous in holding that the step-daughter was a relative under the policy definition. *Id.* at 15.

Initially, we note at least two significant distinctions between the instant case and *Clarkson*. First, *Clarkson* involved a review of a declaratory judgment rendered after

---

**3.** Because we have concluded that the judgment must be reversed based on the first two points, we do not reach Jason's third point on appeal.

trial, whereas the instant case is a review of a summary judgment. Secondly, while the court in Clarkson determined that the step-daughter was still a "resident of and actually living in the same household" as plaintiff, it did not decide the issue which would be more apropos here, to wit: whether she could have also been a resident, for insurance purposes, of the place where she was staying that summer.

In the instant case, the trial court appears to have interpreted *Clarkson* as standing for the proposition that the concept of residence under such an insurance policy definition is synonymous with domicile by saying that "Jason Pruitt remained a resident of Texas because he intended to return there." It quoted from *Clarkson* in saying that as to Missouri, Jason "did not 'intend permanency * * * not in the sense that the residence must never be changed, but in the sense that there is no intention to change it.'" It concluded by saying that "Jason Pruitt did reside in Missouri for the moment, but clearly intended to return to Texas." Under this interpretation, however, even if Jason had intended to stay at the Brock residence for a year or more, he would not have been considered a "resident" there under the Brock's insurance policies as long as he intended to eventually return to Texas. In fact, under this interpretation, a person would never be considered a "resident" for insurance coverage purposes, no matter how long he or she lived with relatives, and no matter what the circumstances were, so long as they intended to eventually return to the place they considered as their permanent home. We believe this is an incorrect interpretation of *Clarkson*.

■ In considering the judgment in the instant case, it is important to note that there is a distinction between the terms "residence" and "domicile." For instance, in *Genrich v. Williams*, 869 S.W.2d 209, 210–11 (Mo.App. E.D.1993) the court quoted with approval from Black's Law Dictionary 1309 (6th ed 1990) as follows:

As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. "Residence" is not synonymous with "domicile," though the two terms are closely related; a person may have only one legal domicile at one time, but he may have more than one residence.

*See also* 28 C.J.S. *Domicile* § 4 (1996).

■ This court has also acknowledged the possibility that a person may be a "resident" of more than one place for purposes of insurance coverage. *See Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 659 (Mo. App. S.D.1987).[4] There the court considered whether a child, living with her mother, was covered, as a "relative," under the uninsured motorist's coverage of her father's policy. The policy defined "relative" as "a person related to the named insured ... by blood ... and who is a resident of and actually living in the same household as the named insured." *Id.* at 656. This court held that the child was "a resident of, and 'actually living in,' two separate households ..." *Id.* at 659. In reaching that conclusion, it said, "The policy did not require that [the father's] residence be [the child's] 'sole' residence, or even her 'principal' residence or her residence 'most of the time.'" The same is true in the instant case. Additionally, the language of the policy here cannot be said to have effectively required that the "relative" establish a domicile at the insured's household as a condition of coverage. This alone indicates that the policy's use of the term

4. *Miller v. United States Fidelity and Guaranty Co.*, 127 N.J.Super. 37, 316 A.2d 51, 54–55 (App. Div.1974) and *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So.2d 866, 873–874 (Miss.1995) are other cases holding that a person may, for the purposes of insurance coverage, be a resident of more than one place.

"resident" connotes something less than domicile.

The *Clarkson* court said, in considering the element of permanency in the concept of "residence" or "resident," that they connote "something of permanence or continuity at least for an indefinite period, to the exclusion of another contemporaneous residence." 413 S.W.2d at 13. Contrary to the apparent ruling of the trial court in the instant case, this indicates that a continuity of a residence for an indefinite time may be sufficient. We do not read *Clarkson* as requiring that a person have no present intention of ever changing the place where he or she is living in order for it to qualify as their "residence" for insurance purposes.

It is significant that the *Clarkson* court noted early in its opinion that the judgment must be affirmed if the policy definition of a "relative" was reasonably susceptible to contrary interpretations under the facts, saying that "... nothing in the field of insurance law is more conclusively settled than the principle that, where there is reasonable doubt or uncertainty as to the meaning of language used in an insurance policy, the interpretation most favorable to the insured will be adopted and the provisions avoiding, limiting or cutting down coverage or liability will be construed most strongly against the insurer." *Id.* at 12. The court then proceeded to acknowledge the "ambiguous, elastic and relative" nature of the terms "reside," "resident" and "residence" in concluding that the step-daughter was still a resident of and actually living in plaintiff's household. *Id.* at 13. It appears, therefore, that the *Clarkson* court was interpreting the policy in a way most favorable to the insured and against the insurer because the term "resident" was susceptible to different meanings.

This approach has also been taken by other courts. In *Cobb v. State Sec. Ins. Co.,* 576 S.W.2d 726, 737 (Mo.banc 1979) the court said, "In uninsured motorist coverage, the meaning of relatives residing in the household is not absolute and inflexible. Generally, courts favor an interpretation to provide insurance coverage." In *American Family Mut. Ins. Co. v. Brown,* 657 S.W.2d 273, 275 (Mo.App. W.D.1983) the court said that "resident of the same household" is a phrase subject to variable interpretation depending on the facts of each particular case. It also described the phrase as having a "chameleon like meaning" with flexible standards for its application. *Id.* at 278.[5]

■■■ Whether or not the language of an insurance policy is ambiguous is a question of law. *Haggard Hauling v. Stonewall Ins.,* 852 S.W.2d 396, 399 (Mo.App. W.D.1993). An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo.banc 1992). If the language of the policy is ambiguous and reasonably open to different constructions then the language will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. *Id.* There are at least two reasons for construing an ambiguous provision against the insurer: (1) insurance is designed to furnish protection to the insured, not defeat it; ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be strictly construed against the insurer; and (2) as the drafter of the policy, the insurance company is in the better position to remove ambiguity from the contract. *Id.* at 210–211.

The difficulty in applying the phrase "resident of your household" in the instant case is also significant as it relates to the propriety of a summary judgment. In *National Mer-*

---

5. We have not ignored Farmers argument that some Missouri cases have held that policies containing the phrase "resident" of a household were not ambiguous. In support, it cites *State Farm Fire & Cas. Co. v. Berra,* 891 S.W.2d 150, 152 (Mo.App. E.D.1995), *Schuster v. Shelter Mut. Ins. Co.,* 857 S.W.2d 381, 384 (Mo.App. S.D. 1993), and *Grinnell Mut. Rein. Co. v. Scott,* 628 S.W.2d 355, 357 (Mo.App. W.D.1981). None of those cases were factually similar to the instant

case or involved an issue similar to that here. Farmers also cites *State Farm Mut. Auto. Ins. Co. v. McBride,* 489 S.W.2d 229 (Mo.App. E.D.1972) for this proposition. There, the court made the statement that the Missouri Supreme Court had examined similar language and had not found it ambiguous. *Id.* at 232. A review of the cases cited, however, reveals that they involved issues different than that in the instant case.

*chandising Corp. v. McAlpin,* 440 S.W.2d 489, 494 (Mo.App. S.D.1969) this court said that "unless the contract is so clear and unequivocal in its meaning that it necessarily, as a matter of law, precludes plaintiff's recovery, a motion for summary judgment based on an interpretation of the contract should be denied." *See also Rice By Rice v. Fire Ins. Exchange,* 897 S.W.2d 635, 637 (Mo.App. S.D.1995).

 In the instant case, Jason was living solely in the Brock household when the accident occurred. There appears to be no dispute about the fact that he was an integrated part of that household. He ate his meals with the rest of the Brock family; he was required to seek the Brock's permission for his activities and was subject to their discipline like the Brock's other children; his clothes were washed with the rest of the Brock family's; he slept in their home; they furnished him with extra spending money; and he was generally treated as a member of their family. These facts are appropriately considered in determining whether a person is a resident of a household. *See State Farm Mut. Auto. Ins. Co. v. McBride,* 489 S.W.2d 229, 233 (Mo.App. E.D.1972).

The issue primarily relied on by Farmers relates to that of "permanency." It argues that Jason had a ticket to return to Texas on July 12 and, therefore, reasons that his stay at the Brock's was a temporary sojourn rather than one which was indefinite. There was evidence submitted to the trial court, however, that although Jason had a return ticket for July 12, it had been purchased because of the necessity of specifying a return date in order to obtain a round-trip fare, it could be changed, and he had intended to stay in Missouri until the hay season was over even if that was after July 12. There was also evidence that his parents had insisted that he come to Missouri and would not have permitted him to return to Texas early. There were, therefore, showings before the trial court, in opposition to the motion for summary judgment, indicating that Jason's stay in Missouri was to some extent indefinite even though he may have intended to return to Texas by the end of the summer.

Residence is a question of fact. *American Family Mut. Ins. Co. v. Automobile Club Inter–Insurance Exch.,* 757 S.W.2d 304, 306 (Mo.App.W.D.1988). Here, the trial court was presented with affidavits and deposition testimony which demonstrated that there were genuine issues of fact for trial. To uphold a summary judgment we must be persuaded that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *International Minerals v. Avon Products,* 817 S.W.2d 903, 906 (Mo.banc 1991). "There may be no summary disposition of any disputed factual matters." *Id.* at 906–907. On a motion for summary judgment, neither the trial court nor this court is to determine issues of credibility. *Podlesak v. Wesley,* 849 S.W.2d 728, 732 (Mo.App. S.D. 1993). Rather, those matters are for determination upon a complete trial. *Id.* "Disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Id.*

The key to a summary judgment is the undisputed right to a judgment as a matter of law, not simply the absence of a fact question. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d at 380. In addition to determining whether any genuine issue of material fact exists which requires a trial, we also review whether the trial court's ruling was correct as a matter of law. In the instant case, we hold that the summary judgment was error.

Contrary to the arguments of Farmers, we do not view *Clarkson* and *State Farm Mut. Auto. Ins. Co. v. McBride,* 489 S.W.2d 229 (Mo.App. E.D.1972) as requiring a different result in the instant case. We have already indicated how we believe *Clarkson* is distinguishable. The issue in *McBride* was the applicability of an exclusion in an automobile liability policy which provided that there was no coverage for "bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." That suit was filed after Cathren McBride filed a wrongful death suit against her nephew for the death of her son, Michael. Michael had moved in with his uncle (the named insured) and aunt (the "Bradens") in January, 1969 after his mother asked them to talk with him about problems with school attendance. He took a job, sent money to his mother, and was generally

treated as part of the Braden family until he was killed in September, 1969 while a passenger in a car driven by one of the Braden children. The Bradens testified that Michael never indicated an intention to return to his mother's home, while Mrs. McBride testified that Michael's stay at the Braden's was only temporary. The court relied heavily on *Clarkson* and affirmed the judgment, holding that Michael was physically present in the Braden home, and that the trial court could have reasonably found that he intended to stay there permanently. *Id* at 232–33. The court also found that Michael had "integrated" into the Braden household. *Id.* at 233. The *McBride* court, however, did not hold that anything less than an intention to stay permanently would prevent a person from qualifying as a resident of the household. Additionally, *McBride*, like *Clarkson*, was a review of a declaratory judgment as opposed to a summary judgment.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

BARNEY, P.J., and PREWITT, J., concur.