[No. F010651. Fifth Dist. June 2, 1989.]

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff and Respondent, v.
CYNTHIA GIBSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Elliott D. Chielpegian and Lawrence E. Small for Defendant and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Robert E. Asperger and Elizabeth L. Dolter for Plaintiff and Respondent.

**OPINION**

**MARTIN, Acting P. J.—** In this appeal from a summary judgment in favor of an insurer, we are called upon to determine whether a clause in an automobile liability insurance policy which excludes coverage for bodily injury to a relative of the insured who is a resident of the insured's household is sufficiently clear and unambiguous so as to eliminate any obligation on the part of the insurer to defend and indemnify the named insured in an action brought by the insured's former wife for the wrongful death of their son who spent a substantially equal amount of time in the household of each parent.

### STATEMENT OF THE FACTS AND PROCEEDINGS

Bruce Gibson and appellant, Cynthia Gibson, were married in 1978. Their only child, Sean, was born in 1980. The Gibsons separated in 1984, and a final judgment of dissolution of the marriage was entered on April 1, 1986. The judgment of dissolution provided for joint legal custody and shared physical custody, but with the primary place of residence being with Cynthia. The judgment further provided the physical custody of Sean was to be with Bruce from Sunday evening until Wednesday morning and with

Cynthia from Wednesday until Sunday evening. The parties followed this order regarding custody until Sean's death in 1986. Sean had his own room at his father's house where he kept a separate array of clothing. His father provided him with food, gifts, toys and pocket money when Sean stayed with him. His father's address was listed on Sean's physician's records, and Sean received mail at his father's address.

Sean died in an automobile accident on June 23, 1986. Bruce was driving the vehicle in which Sean was a passenger.

At the time of the accident, Bruce was insured by an automobile liability policy issued by respondent Safeco Insurance Company of America (Safeco), which provided that the liability section of the policy did not extend to provide coverage for "bodily injury to any named insured, or any relative; . . ." The term "relative" is defined in the policy as ". . . a relative of the named insured who is a resident of the same household."

After the accident, Cynthia filed a wrongful death action against Bruce. Safeco assumed Bruce's defense in that action under a reservation of rights and filed a declaratory relief action seeking an adjudication of its obligation to defend Bruce or to provide coverage for the liability or potential liability of Bruce for the injuries and damage suffered by Cynthia as a result of their son's death.

Based upon the family exclusion clause contained in Bruce's policy, Safeco filed a motion for summary judgment or, in the alternative, for summary adjudication of issues. The trial court granted the motion for summary judgment and entered judgment declaring that the policy issued by Safeco did not provide coverage for liability or potential liability for the injuries and damages suffered by Cynthia as alleged in the wrongful death action and that Safeco was not required to undertake Bruce's defense in that action.

DISCUSSION

PART I

THE FAMILY EXCLUSION CLAUSE

It is fundamental that a motion for summary judgment will be granted if the papers submitted establish that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) However, summary judgment is a drastic measure which deprives the losing party of a trial on the merits. It may not

be granted unless the supporting papers clearly show that there is no triable issue of fact. (*Dalton* v. *Metropolitan Property & Liability Ins. Co.* (1982) 136 Cal.App.3d 1037, 1040 [186 Cal.Rptr. 685].)

 Appellant summarizes her argument in the instant case as follows: "The summary judgment granted Respondent in this case was in error as Respondent was not entitled to judgment as a matter of law and a triable issue of material fact was shown. Under applicable rules of insurance contract interpretation, the family exclusion provisions must be narrowly construed because the term 'resident' was ambiguous. Respondent failed to show that its interpretation of the policy was the only construction which might fairly be placed on the policy. Whether Sean Gibson resided with his father is a triable issue of material fact." She contends under the general rules of construction, the policy must be construed against the insurer and in favor of coverage unless Safeco can establish under the circumstances that exclusion is the only reasonable construction which may fairly be placed on the policy.

Safeco counters there is no ambiguity under the circumstances since the facts demonstrate Sean was a resident of his father's household at the time of the accident. The trial court agreed. The court specifically stated: "Here, I find that on the evidence presented the child was a 'resident' of his father's household during the time he was in the physical custody of his father, including at the time the accident occurred. That the evidence may also support a determination that the child was a resident of his mother's household during the time the child was in her physical custody is to me irrelevant, for the reasons set out above. The carrier thus is entitled to the summary judgment it seeks."

The established principles applicable to the interpretation of insurance policies are set forth in *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800 [180 Cal.Rptr. 628, 640 P.2d 764].

 "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]

 "On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the

insurer-draftsman controls the language of the policy. [Citations.] Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' [Citations.] '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again, "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect" [citation]; thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.]' [Citation.]" (30 Cal.3d at pp. 807-808.) However, this rule of construction is applicable only when the policy language is ambiguous. (*Ibid.*; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273-274 [54 Cal.Rptr. 104, 419 P.2d 168].)

 ■ A policy provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541, 548 [184 P.2d 153, 173 A.L.R. 896].)

 ■ Appellant contends the terms "resident" and "household" are ambiguous and have required interpretation in the past, citing *Island* v. *Fireman's Fund Indemnity Co., supra,* 30 Cal.2d at page 547; *Hardware Mutual Casualty Co.* v. *Home Indemnity Co.* (1966) 241 Cal.App.2d 303, 311 [50 Cal.Rptr. 508]; and *Cal-Farm Ins. Co.* v. *Boisseranc* (1957) 151 Cal.App.2d 775, 781 [312 P.2d 401]. Respondent again counters that the courts have been unsympathetic when claimants have sought a strained interpretation of phrases such as "a resident of the same household" in order to find coverage, citing *California State Auto. Assn. Inter-Ins. Bureau* v. *Hoffman* (1978) 77 Cal.App.3d 768 [143 Cal.Rptr. 835]; *Dalton* v. *Metropolitan Property & Liability Ins. Co., supra,* 136 Cal.App.3d 1037; and other cases reflecting a reasonable rather than a strained construction of the policy. In our view, none of these cases need be individually discussed and construed here. While instructive, each is readily distinguishable from the facts in the instant case. Rather, it seems to us the common thread that runs through each of these cases is not whether the terms "residence" or "member of the household" are themselves inherently ambiguous, but whether, under the particular facts of each of those cases, insurance coverage was extended or excluded under the terms of the policy in question.

In the instant case, the trial court concluded that the dissolution of marriage order should not, alone, be determinative of the residency of a

minor child. We agree. Such orders are drafted by judges or attorneys with little or no consideration to how the wording of custody provisions will affect liability insurance coverage. Furthermore, whether or not an insurer is responsible for defending and indemnifying an insured should not be determined by the language chosen by a court or counsel in drafting a custody order, a choice in which the insurer has no participation. It is insignificant whether a decree designates the time a minor lives with a particular parent as "custody" or "visitation." As the court in *Cal-Farm Ins. Co.* v. *Boisseranc, supra,* 151 Cal.App.2d at page 781, noted, "It is certainly obvious that the terms of the custody decree are not controlling as a matter of law."

Furthermore, parties to a custody decree in practice often deviate substantially from the terms of the decree. Thus, it would be ludicrous to find that a minor is the resident of the household of a parent who is awarded physical custody if, in fact, the minor lives with the other parent all or most of the time. (See, e.g., *Cal-Farm Ins. Co.* v. *Boisseranc, supra,* 151 Cal.App.2d at p. 784.)

Government Code section 244 provides in pertinent part: "In determining the place of residence the following rules shall be observed:

". . . . . . . . . . . . . . . . . . . .

"(b) There can only be one residence.

". . . . . . . . . . . . . . . . . . . .

"(d) The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child."

Likewise, Welfare and Institutions Code section 17.1 reads in part: "(a) The residence of the parent with whom a child maintains his or her place of abode . . . determines the residence of the child."

The trial court found that the minor victim was a resident of his father's household at the time the accident occurred. In reaching this conclusion the court stated: "When the decree is read with careful attention to the precise placement of those words of art, it is susceptible to interpretation as establishing the child's residence at the location of the home of the parent who happened to have him pursuant to the order. It appears that the decree was drafted so as to result in an award to the parents of the 'joint physical custody' of their son, as that phrase is used in C.C. § 4600.5(d)(3), such that

the child's residence is the residence of the parent who is then exercising the right to physical custody. In that regard, I note that the word 'visitation' in C.C. 4600.5 is used only in connection with the definition of 'sole physical custody' (subsection (d)(2)); it is not used in connection with the definition of 'joint physical custody' (subsection (d)(3)). Also, to select the words 'primary residence' is to imply the existence of another, 'secondary residence,' and to prohibit either party from moving out of the state in order to change the child's permanent residence presupposes that both parents had that power.

"· · · · · · · · · · · · · · · · · · · · · ·

"In addition, to decide the issue by reference to the rule of construction which favors the extension of coverage so long as it is reasonable to do so can be unfair to the insurer in some circumstances. For example, an initial finding that the facts presented provide a sufficient basis upon which to 'reasonably' conclude that the child resided with the mother when the child was with the mother, which would arguably support a result in favor of coverage, should not end the inquiry, for the facts before the Court might also provide a sufficient basis upon which to reasonably conclude that the child resided with the father when the child was with the father, which would support a result against coverage. Moreover, to hold in such circumstance that the issue is for the trier of fact to decide is to posit the premise that the child may legally have only one 'residence', regardless of the status of his parents' relationship, and is to insure that the litigation of the issue before the trier of fact will reduce itself to a battle of sock counting and 'one-upmanship' between the parents, hardly a rational basis for assessing insurance coverage. When dealing with an unemancipated, unincarcerated minor child of divorced parents, that the child may have a dual residence does not appear to be an illogical, unwarranted or unjustified notion." (Fn. omitted.)

Since 1984, Civil Code section 4600.5, subdivision (a) has provided that joint custody is in the best interests of a minor child; subdivision (d)(1) of said section provides " '[J]oint custody' means joint physical custody and joint legal custody." Family law courts have, of course, adhered to this expressed preference where there is no viable reason to deny joint custody, as in the instant case. Joint physical custody and joint legal custody in appropriate cases achieves a desirable purpose, i.e., keeping both the mother and father actively involved on an almost continuous basis in the rearing and parenting of their minor child or children. This is especially true where, as here, the child is of tender years and spends his time, more or less, divided equally between the two households, switching back and forth at frequent intervals. Thus, upon the facts before it, which were not disputed,

the trial court reasoned: "When dealing with an unemancipated, unincarcerated minor child of divorced parents, that the child may have a dual residence does not appear to be an illogical, unwarranted or unjustified notion."

In our view, the trial court's rationale is not unreasonable. Whether, upon these facts, one speaks in terms of "dual residences," two distinct but ongoing residences, or a separate residence at the home of each parent, where the child is physically located at a given point or period of time is not significant. The law has created this anomaly and, it seems to us, it is not in conflict with the provisions of Government Code section 244 and Welfare and Institutions Code section 17.1. It is clear that when Sean lived with his mother, every Sunday he would go to live with his father; when living with his father, every Wednesday he would go to live with his mother. According to the record before us, there were no exceptions contemplated to this schedule. Whichever household he resided in at a given point in time, it was known and accepted he would move to or return to the other parent's household within three or four days. The court order so provided and Sean's parents complied with that order. Thus, although Sean had but one legal residence at a time, where he was then living, in reality and as a practical matter, he had dual residences as the trial court suggested. To conclude on these facts he had a primary and a secondary residence would be to exalt form over substance.

At the date of the tragic accident which took Sean's life, he was living with his father in accordance with the custody order. Therefore, at that point in time he was a resident of his father's household. As such, Sean came within the family exclusion clause contained in the father's Safeco insurance policy.

Appellant nevertheless contends a factual issue exists as to whether Sean was a resident of his father's household at the time of the accident. As previously stated, the facts here involved are undisputed and, as we have stated, establish that Sean was a resident of his father's household at the time of the accident. Therefore, there are no triable issues as to any material facts. The proper construction of an insurance policy presents purely a question of law. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571 [218 Cal.Rptr. 407].) The trial court properly granted respondent's motion for summary judgment.

## PART II

### LIABILITY FOR INJURIES SUSTAINED BY THE CHILD'S MOTHER*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondent is awarded its costs on appeal.

Baxter, J., concurred.

STONE (W. A.), J., Dissenting.—I respectfully disagree with the majority that the undisputed facts entitle respondent to judgment as a matter of law.

At the crux of this controversy is the meaning of the term "resident of the same household" as the insured. The term is not defined in the policy. As the majority has noted, a policy provision is ambiguous if it is capable of two or more constructions, at least two of which are reasonable. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541, 548 [184 P.2d 153, 173 A.L.R. 896].)

The term "resident of the same household" has no absolute meaning. (*Cal-Farm Ins. Co.* v. *Boisseranc* (1957) 151 Cal.App.2d 775, 781 [312 P.2d 401].) The meaning of this language varies according to the circumstances and whether the language is found in terms of inclusion or exclusion. (*Ibid.*) When ambiguous language is found in an exclusionary clause, it must be construed narrowly against the insurer. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].)

I recognize that the meaning of this term is not ambiguous when applied in the context of the nuclear family or even in the circumstances of an extended family. What renders the use of the term ambiguous in the context of this case is the shared custody of a minor child, a child who lives part-time with each parent. In such a case, which household is the residence of the minor child for purposes of the family exclusion clause?

The trial court determined that, for the purpose of liability insurance coverage, Sean was a resident of his father's household because the accident occurred during that part of the week when Sean lived with his father. At first blush, that resolution seems sensible. However, it is unclear from the court's analysis whether it concluded that Sean was at all times a resident of

---

*See footnote, *ante,* page 176.

both households or whether his residence rotated from one household to the other. In the former event, Sean would always be excluded from coverage under the policy of each parent pursuant to the family exclusion clause. In the later case, he would be excluded from coverage depending upon in which household he was living at the time of an accident. This ambiguity is in a sense irrelevant since in either case coverage would be excluded given the facts before us. However, I believe there is a third construction of the term which would favor coverage.

Government Code section 244 provides in part as follows: "In determining the place of residence the following rules shall be observed:

"*.* . . . . . . . . . . . . . . . . . .

"(b) There can only be one residence.

"*.* . . . . . . . . . . . . . . . . .

"(d) The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child."

Likewise, Welfare and Institutions Code section 17.1 reads in part: "(a) The residence of the parent with whom a child maintains his or her place of abode . . . determines the residence of the child."

The effect of the foregoing statutes, coupled with the rule compelling a narrow construction of language of exclusion, is that a minor child who is *the subject of an order for shared or joint physical custody has only one residence which is to be considered his or her primary residence.* Thus, under this interpretation of the term, it remains to be determined whether Sean's primary residence was with his mother or whether his primary residence was with his father. In my view, this interpretation of the term "resident of the same household" is reasonable and could require coverage.

Our task is not to settle which of the three interpretations of the policy language is the most reasonable or to determine which ranks highest on the spectrum of reasonable interpretations. Rather, our task is to determine whether any reasonable interpretation would result in coverage.

A policy of insurance is an adhesion contract and, as such, if a term is ambiguous, under long-settled principles of insurance contract interpretation that term must be construed against the insurer. (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 614 [222

Cal.Rptr. 276] ["Any ambiguity in an exclusionary clause will be strictly interpreted against the insurer, and reasonable doubts as to uncertain language must be resolved in favor of the insured."]; *Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1042 [211 Cal.Rptr. 902] ["[D]oubtful policy obligations, and ambiguities therein, must be construed against the insurer and in favor of coverage . . . ."]; *Island* v. *Fireman's Fund Indemnity Co., supra,* 30 Cal.2d at p. 548 ["A cardinal rule of interpretation is that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder."]; *Cal-Farm Ins. Co.* v. *Boisseranc, supra,* 151 Cal.App.2d at p. 780 ["[I]n determining whether the trial court's construction is reasonable any ambiguities in the policy must be interpreted against the insurer."].)

Our function may be analogized to that of a jury in a criminal action that is based on circumstantial evidence. CALJIC No. 2.01 instructs the jurors that if circumstantial evidence "is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence," they must "adopt that interpretation which points to his innocence . . . ." Likewise, we must examine the reasonable interpretations of the particular policy language, and if one such interpretation provides coverage, the construction must be against the insurer.

Safeco did not carry its burden of establishing that it was entitled to judgment as a matter of law. It was error to grant the motion for summary judgment.

I would reverse the judgment.