[No. A048070. First Dist., Div. Three. Feb. 6, 1991.]

HOWARD JACOBS, Plaintiff and Appellant, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

586

**COUNSEL**

Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link and Ronald H. Wecht for Plaintiff and Appellant.

Kincaid, Gianunzio, Caudle & Hubert, Eliot R. Hudson and Andrew Thomason for Defendant and Respondent

**OPINION**

**CHIN, J.**—Plaintiff and appellant Howard Jacobs (appellant) appeals from a summary judgment granted in favor of Fire Insurance Exchange (insurer) after the trial court concluded that the tortfeasor was not a permanent resident of the household of the named insured, Erma Peterson (Erma), and therefore was not insured under her policy. We find no error in the granting of summary judgment and therefore affirm.

### The Facts

*Summary.* In November of 1986, 18-year-old Luis Arreaga (Luis) allegedly injured appellant by causing a truck to hit him. At the time Luis lived in one unit of a duplex with his father, Carlos, and his stepmother, Connie Arreaga (Connie). Erma, Connie's grandmother, owned the duplex and lived in the other unit.

At all pertinent times Erma was insured by a homeowner's policy issued by insurer. The policy provided liability coverage for the named insured Erma and for relatives or persons under age 21 "if permanent residents of [her] household."[1]

Appellant's attorney made a demand on insurer for the limits of the policy on the theory Luis was a resident of Erma's household. Insurer disagreed and denied the claim. Appellant obtained a default judgment in excess of $1 million against Luis. In exchange for a covenant not to execute, Luis assigned all claims and causes of action he might have against insurer to appellant. ■ ■■■■ Appellant filed this action against insurer for violation of Insurance Code section 790.03 and negligent infliction of emotional distress.[2]

---

[1] The policy defined "[i]nsured" as follows: "Insured means you and the following persons if *permanent residents of your household;* [¶] a. *your relatives.* [¶] b. *anyone under the age of 21."*

[2] The private civil cause of action under Insurance Code section 790.03 was eliminated prospectively only, as of August 18, 1988, by the Supreme Court in *Moradi-Shalal* v. *Fireman's*

The trial court granted summary judgment, and held that as a matter of law Luis was not a member of Erma's household.

*Scope of Erma's household.* The two units in the duplex were separated by a solid wall. Each had a separate entrance, backyard, mailbox, kitchen, and bathroom. Prior to 1983, Erma occupied unit A of her duplex and rented unit B to tenants.

In about 1983, when Erma was approximately 85 years old and in declining health, Connie moved into unit A to help care for her. After Erma and Connie lived together in unit A for a few months, Erma evicted the tenants in unit B and moved into that half of the duplex. Connie stayed in unit A with her husband (Luis's father), who had moved in shortly before Erma left. Luis moved into unit A with his father and Connie in 1985 and resided there until January of 1987. He never slept at or stored possessions in unit B while he resided in unit A with his parents.

After Erma moved out of unit A, Connie paid $250 per month rent, the same amount paid by Erma's prior tenants. However, there was no written rental agreement because, in Erma's words, "we're family."

After Connie moved into the duplex, she had daily contact with Erma. Connie prepared Erma's daily medications, took her to medical and dental appointments, and periodically checked to see how she was. Connie also paid all of Erma's bills (using Erma's money) and generally took care of "all" her business, including paying insurance premiums and making insurance claims. Connie always had a key to Erma's unit, and apparently had access to the unit as necessary to provide her with assistance. In general, Connie considered herself to be Erma's "caretaker."

Erma ate separately from Connie and her family, but in the past Connie regularly prepared leftovers and brought them to Erma's unit for dinner. In 1989, Erma was receiving her meals from the Meals on Wheels program.

Luis's involvement in caring for Erma was limited. He assisted Connie "[m]aybe once a week" in some manner, including helping to sort out Erma's medications and helping Erma get down the stairs of her apartment.

Erma intended that her homeowner's insurance apply to the entire duplex *structure.* Subjectively, however, she considered the A and B units to

*Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58]. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1144, fn. 4 [271 Cal.Rptr. 246] [last ¶], petn. for review den. Sept. 13, 1990; see Kornblum et al., Cal. Practice Guide: Bad Faith (1990) Statutory Actions, § 9:171, p. 9-42.)

be "separate households," and did not believe she and Luis were part of the same household.

Based on this evidence, the trial court concluded there was no triable issue of fact that Luis was part of Erma's household and granted summary judgment for insurer.

*Discussion*

*Standard of Review*

Summary judgment is proper if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ In reviewing a summary judgment, we determine whether the facts shown by the parties give rise to a triable issue of fact. In making this determination we strictly construe the moving party's papers, while liberally construing those of the opposing party. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708]; *Safeco Ins. Co.* v. *Gibson* (1989) 211 Cal.App.3d 176, 179-180 [259 Cal.Rptr. 206].)

Applying this standard to the facts of the present case, we conclude the trial court properly granted summary judgment.

*Definition of "Household"*

■ Appellant argues that the term "household" is ambiguous, must therefore be construed, and must be interpreted in its most inclusive sense to provide coverage.

■ It is true that the rules of interpretation of insurance contracts provide that any ambiguity or uncertainty in an insurance policy is resolved against the insurer. "The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draft[er] controls the language of the policy. [Citations.] Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' [Citations.]" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764]; *Safeco Ins. Co.* v. *Gibson, supra,* 211 Cal.App.3d at pp. 180-181.)

 However, the rules of construction do not apply if either of two situations exists. First, there is no need for construction if a provision is unambiguous, which means it can be interpreted in only one reasonable way. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Safeco Ins. Co.* v. *Gibson, supra*, 211 Cal.App.3d at p. 181.) Second, "[w]hen a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature. [Citation.] In addition, the statute must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer (unlike ambiguous or uncertain policy language). [Citations.]" (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230].) We find that both of the situations exist in the case at bench.

*"Household" is not ambiguous.* The policy at issue provided liability coverage for Erma and her relatives and persons under age 21 "if permanent residents of [her] household . . . ." The quoted clause imposes two requirements. First, the person for whom coverage is sought must permanently reside with the named insured. Second, the person for whom coverage is sought must belong to the same household as the named insured. It is undisputed that Luis resided in the A unit with his parents. The question is whether the residents of the A and B units comprise a single household or two separate households.

Some courts have said that the term "household" has "no absolute meaning" and that its meaning may "vary according to the circumstances." (*Cal-Farm Ins. Co.* v. *Boisseranc* (1957) 151 Cal.App.2d 775, 781 [312 P.2d 401]; see also cases cited in *Watt by Watt* v. *Mittelstadt* (Mo.Ct.App. 1985) 690 S.W.2d 807, 815 (hereafter *Mittelstadt*); *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541, 547 [184 P.2d 153, 173 A.L.R. 896]; *Highlands Ins. Co.* v. *Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 175, fn. 2 [154 Cal.Rptr. 683].) Others have held that "household" is unambiguous when used in a contract of insurance. (*Safeco Ins. Co.* v. *Gibson, supra*, 211 Cal.App.3d at p. 181; *California State Auto. Assn. Inter-Ins. Bureau* v. *Hoffman* (1978) 77 Cal.App.3d 768, 774 [143 Cal.Rptr. 835]; *Mittelstadt, supra*, 690 S.W.2d at pp. 815-816.) We agree with the latter cases, which explain their holding by observing that the apparent conflict in the cases interpreting "household" is not due to any inherent ambiguity in the term itself, but instead arises from the difficulty of applying varying sets of facts to a fixed definition.

Thus, in *Safeco Ins. Co.* v. *Gibson, supra*, 211 Cal.App.3d at page 181, the court said, "it seems to us the common thread that runs through [cases interpreting 'resident' and 'household'] is not whether the terms 'resident'

or 'member of the household' are themselves inherently ambiguous, but whether, under the particular facts of each of those cases, insurance coverage was extended or excluded under the terms of the policy in question." Similarly, in *Mittelstadt, supra*, 690 S.W.2d at pages 815-816, the court stated that "[c]ontrary to what is asserted by [the plaintiffs], what this court observes from the [cited authorities construing the term 'household'] *is not* that the term 'household' is ambiguous and thus capable of two or more interpretations, *but* rather these authorities reveal a struggle of determining whether, under a prescribed set of facts an individual is an insured or not within the terms of any insurance policy." (Original italics.)

We agree that the term "household" is unambiguous. As we explain below, that term is not subject to different definitions; rather, the various fact patterns presented to courts demonstrate a range of human experience—some households are simply more or less unusual than others.

A number of California authorities cited by both parties are not directly in point on the issue before us, because they focus on whether or not a family member is a *resident* of a household when he or she is not living at the household's situs on a daily basis.[3] ·

However, the California Supreme Court adopted a definition of "household" in *Island* v. *Fireman's Fund Indemnity Co.*, *supra*, 30 Cal.2d at page 548. There, an automobile policy provided coverage for the named insured's automobile and any other automobile driven by the named insured *except* one owned by " 'a member of his household.' " The named insured had an

---

[3] See *Safeco Ins. Co.* v. *Gibson, supra*, 211 Cal.App.3d at page 184 (child in joint custody of divorced parents; court determined that child had " 'dual residences' " in both households); *Northwestern National Casualty Co.* v. *Davis* (1979) 90 Cal.App.3d 782 [153 Cal.Rptr. 556] (minor child in the military deemed a resident of his parents' household though living outside the home); *Reserve Insurance Co.* v. *Apps* (1978) 85 Cal.App.3d 228, 231-232 [149 Cal.Rptr. 223] (husband deemed a resident of wife's home even though separated and living in an apartment); *State Farm Mut. Auto. Ins. Co.* v. *Elkins* (1975) 52 Cal.App.3d 534, 537, 541 [125 Cal.Rptr. 139] (19-year-old daughter deemed a resident of her father's household even though living in a separate apartment as an "experiment"); *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898 [88 Cal.Rptr. 593] (minor child in the military deemed a resident of his parents' household though living outside the home); *Vanguard Ins. Co.* v. *Hartford Ins. Co.* (1970) 9 Cal.App.3d 765 [88 Cal.Rptr. 628] (minor child spending weekend with family friends not a resident of their household); *Hardware Mutual Casualty Co.* v. *Home Indemnity Co.* (1966) 241 Cal.App.2d 303, 308-312 [50 Cal.Rptr. 508] (nephew who was found to be living with his aunt and uncle deemed a resident of their household); *Cal-Farm Ins. Co.* v. *Boisseranc, supra*, 151 Cal.App.2d at pages 778-784 (child of divorced parents deemed a resident of father's household even though staying with mother when accident occurred); *Olson* v. *Standard Marine Ins. Co.* (1952) 109 Cal.App.2d 130, 136-137 [240 P.2d 379] (daughter deemed " 'of the same domicile' " as mother even though mother lived in San Francisco and daughter in Los Angeles; daughter had lived with mother in San Francisco and had not intended to change domicile to Los Angeles unless certain conditions were met).

accident while driving a car owned by his son, who was in the Army and living away from home. (*Id.*, at p. 543.) The insurer denied that there was coverage because the car was owned by a member of the named insured's household (namely, his son). The Supreme Court held for the insured, stating: "One of the definitions of the word 'household' given in Webster's New International Dictionary is 'Those who dwell under the same roof and compose a family; a domestic establishment.' The courts have noted that the term may have different meanings under different circumstances. [Citations.] In one of these cases it was said that the word 'is variously used to designate people, generally, who live together in the same house, including the family, servants, and boarders, or it may be used as including only members of the family relation . . . .' (*Moore Shipbuilding Corp.* v. *Industrial Acc. Com.* [(1921) 185 Cal. 200, 207 (196 P. 257, 13 A.L.R. 676)].) A federal court declared: '. . . Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness."' In that case, it was held that when two families came together temporarily, 'Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is us ed in the policy.' [Citation.]" (*Island, supra,* 30 Cal.2d at pp. 547-548.)

As can be seen from the above definitions, there are at least two aspects of a "household." First, a "household" includes family members and others, whether related or not, who live together under one head. ■ ■ ■ ■ ■ Second, the persons live together, be it " 'in the same house' " or " 'under one roof' " or at least " 'within one curtilage.' "[4] (*Island* v. *Fireman's Fund Indemnity Co., supra,* 30 Cal.2d at pp. 547-548.) In *Island,* the Supreme Court concluded that the son was not a member of the named insured's household at the time of the accident. (*Id.,* at p. 548.)

We cannot ignore a clear statement defining the term "household" issued by our highest court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Also, when we look at decisions from other states, we find that the *Island* court's definition of "household" is generally accepted and workable.

---

[4] Black's Law Dictionary defines curtilage in part as "[t]he inclosed space of ground and buildings immediately surrounding a dwellinghouse. [Citations.] [¶] . . . A small piece of land, not necessarily inclosed, around the dwelling house, and generally includes the buildings used for domestic purposes in the conduct of family affairs." (Black's Law Dict. (5th ed. 1979) p. 346, cols. 1-2.)

For example, a Missouri case—*Mittelstadt, supra,* 690 S.W.2d 807—involved facts similar to those before us. A dog belonging to the insureds' son and daughter-in-law attacked the minor plaintiff. The plaintiffs sued the insurer, contending that the son and daughter-in-law were insured under the parents' policy, which provided coverage for relatives who were "residents of [the named insureds'] household . . . ." At the time of the injury the younger couple resided in a self-contained upstairs apartment of the parents' home. As rent, they paid a portion of the monthly utility costs and promised to maintain the property. The two couples (the son and his wife and the son's parents) acted independently. They only ate meals together on holidays or special occasions. Any family decisions between the two couples were made independently of each other. Each couple secured its own separate income and paid its own expenses, and each couple conducted all household chores and functions independently from the other couple.

The plaintiffs in *Mittelstadt* survived a motion for summary judgment. However, following a trial on the merits, the trial court concluded there were two separate households and consequently held that the son and his wife were not insured under the parents' policy. (*Mittelstadt, supra,* 690 S.W.2d at pp. 808-809.)

The Missouri Court of Appeals affirmed after painstakingly analyzing and condensing the existing definitions of "household" from various jurisdictions. (*Mittelstadt, supra,* 690 S.W.2d at pp. 812-816.) The court articulated what it considered to be an unambiguous definition: "The term 'household' as that term is expressed and to be made use of within insurance contracts shall mean a collection of persons, whether related by consanguinity or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness." (*Id.,* at p. 816.) The *Mittelstadt* court viewed the facts in the case before it as "unequivocally [revealing] two independent 'households' between the two couples." (*Ibid.*)

Similar facts were also considered by the Court of Appeal of Louisiana in *Hernandez* v. *Comco Ins. Co.* (La.Ct.App. 1978) 357 So.2d 1368. The named insured's son-in-law injured a third party. The named insured's liability policy provided coverage for relatives "if residents of the Named Insured's household . . . ." The named insured and his wife owned a lot with two separate residences; they lived in one residence and their daughter and son-in-law lived in the other, paying $50 per month rent. The two couples separately paid their own utilities, purchased their own groceries, cooked their own meals, and did their own laundry. Occasionally they

helped each other with house or yard work, and the named insured's wife regularly kept her daughter's child at her house during the day. At trial, the lower court determined that the son-in-law was not a member of the named insured's household, but nonetheless found coverage under the policy. (*Id.*, at p. 1371.) The appellate court reversed. The *Hernandez* court observed: "The problem of defining the word 'household' has been faced by innumerable courts with no clear or easy resolution. [Citation.] Ultimately, whether a person is a member of a given household is a question of fact, to be determined after consideration of all the circumstances . . . . [¶] Perhaps the most appropriate definition of 'household' was set forth by the court in *Leteff* v. *Maryland Casualty Co.*, 91 So.2d 123 (La.App. 1st Cir. 1956): [¶] 'Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness."' [Citation.]" (*Hernandez, supra,* at pp. 1370-1371.) This is nearly the same definition later adopted by the court in *Mittelstadt, supra,* 690 S.W.2d at page 816.

The *Hernandez* court then observed that "[t]he pattern which emerges from the myriad of decisions considering the term 'household' seems to be an emphasis on dwelling as a family under one head." (*Hernandez* v. *Comco Ins. Co., supra,* 357 So.2d at p. 1371.) The *Hernandez* court also noted that living "technically" under the same roof is not essential. (*Id.*, at p. 1370.) Nevertheless, the court concluded that the facts before it clearly established two distinct households, dwelling apart. (*Id.*, at p. 1371.)

Based upon our understanding of the above decisions, a "household" may be broadly defined as a collection of persons, whether related or not, who live *together* as a group or unit of permanent or domestic character, with one head,[5] under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interests.[6]

---

[5] By using this term we do not mean to imply that a household can only consist of a traditional family with a father or mother at the "head." Rather, we use the term in its broad sense to mean a common source of authority or leadership to which the other members of the household are subject. Thus, a "head" may be a father, a mother, both parents acting together, or some other person whom the members of the household recognize as their "head."

[6] It is not required that the members have a common subsistence, since this implies that the members must live from a single income or pool their incomes together. This does not appear to be the law in California, where the courts have held that minor children in the military are members of their parents' "households" even though living outside the home. Presumably, those children are being paid and supported by the government and do not share a common subsistence with their parents. (See *Northwestern National Casualty Co.* v. *Davis, supra,* 90 Cal.App.3d 782; *Allstate Ins. Co.* v. *Smith, supra,* 9 Cal.App.3d 898.)

*The Legislature has authorized use of "household."* As we stated above, even if language of an insurance policy might otherwise be construed as ambiguous, it is not subject to construction by the courts if use of the phrase is authorized by statute and is thereby deemed consistent with public policy established by the Legislature. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d at p. 684.)

The word "household" has been used by the Legislature in codified statutes well over 100 times in a wide variety of contexts. For example, the Domestic Violence Prevention Act (Code Civ. Proc., § 540 et seq.) recites legislative purposes which include "to prevent the recurrence of acts of violence . . . against a spouse, former spouse, cohabitant, former cohabitant, [and others]." (Code Civ. Proc., § 540.) The act defines " '[c]ohabitant' " as "a person who regularly resides in the household." (Code Civ. Proc., § 542, subd. (c).)

The Legislature has provided for punishment of those who make terrorist threats against an individual or against the person's " 'immediate family,' " which is defined as "spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household . . . ." (Pen. Code, § 422.)

Although the Insurance Code does not contain the full text of a statutory homeowner's liability policy, the Legislature has used the term "household" repeatedly throughout that code. For example, the section defining "[l]iability insurance" as including certain disability insurance refers to coverage of "the insured and members of [the insured's] household . . . ." (Ins. Code, § 108.) The statutory automobile liability policy provision regarding the insurer's obligation to defend, which is essentially the same as that contained in a standard homeowners liability policy, refers to a person who is "a resident of the same household as the named insured." (Ins. Code, § 11580.1, subd. (d)(1)1.) Also, the statutory uninsured motorist endorsement provision refers to an automobile owned by "the named insured or any resident of the same household . . . ." (Ins. Code, § 11580.2, subd. (b); see also §§ 660 [defining " '[p]olicy' " as issued to an individual or "individuals residing in the same household"]; 661 [permitting cancellation of policy because of suspension of a driver's license of someone who "resides in the same household" as the insured].)

Thus, "household" is commonly used by the Legislature throughout California codes, and, most important, in the Insurance Code. Therefore, we should interpret the word not strictly against the insurer, but in a manner which implements the apparent intent of the Legislature in author-

izing use of the term in the insurance policies. We note that the Legislature's definition of "household" in other contexts is quite similar to that of the Supreme Court and other courts which we discussed above. (E.g., Pen. Code, § 422, *ante*.)

*Application of these principles.* ██ In this case the trial court determined that the question whether Erma and Luis were members of the same household did not present a triable issue of fact, and that they belonged to separate households as a matter of law. We believe the trial court was correct. ██ We recognize that summary judgment "is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations.]" (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; see also *Spradlin* v. *Cox* (1988) 201 Cal.App.3d 799, 805-806 [247 Cal.Rptr. 347].) "The aim of the summary judgment procedure is to discover . . . whether the parties possess evidence requiring the weighing procedure of a trial; the motion may be granted only if no triable issue of fact appears; the court may not pass upon the issue itself. [Citation.]" (*G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 993 [91 Cal.Rptr. 227].)

██ In our view the evidence presented in the case at bench did not require "the weighing procedure of a trial . . . ." There is no evidence in this case from which a trier of fact could conclude that Luis belonged to Erma's household.

We base this conclusion not on the fact that they did not live "technically" under one roof (*Hernandez* v. *Comco Ins. Co.*, *supra*, 357 So.2d at p. 1370), although they arguably lived within one curtilage, but on the conclusion as a matter of law that they did not come within the definition of "household" which we have taken from decisions of our Supreme Court and other courts and usage of the Legislature. Luis and Erma did not live together as part of a group having permanent or domestic character. They did not share meals. Erma did not consider Luis to be in her household. Luis lived in a separate household and simply helped occasionally in caring for Erma. No triable issue of fact existed.

The judgment is affirmed.

Merrill, J., concurred.

**WHITE, P. J.**—I respectfully dissent. Unlike the majority, I conclude there is a triable issue of fact that Erma and Luis are members of the same household. In addition, although the majority have applied the correct

definition of "household" in this case, they have done so for the wrong reason. I therefore write to explain my understanding of the correct analysis for arriving at this definition.

In my view, the term "household" is ambiguous and is subject to the normal rules of construction in insurance cases. Because we are construing a coverage clause, this means we must interpret "household" as broadly as is reasonably possible. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].)

A policy provision is ambiguous if it may be interpreted in at least two ways, both of which are reasonable. Whether a policy provision is ambiguous is a question of law. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Safeco Ins. Co.* v. *Gibson* (1989) 211 Cal.App.3d 176, 181 [259 Cal.Rptr. 206].) Although the majority acknowledge cases which state that the term "household" has "no absolute meaning" and that its meaning may "vary according to the circumstances" (*Cal-Farm Ins. Co.* v. *Boisseranc* (1957) 151 Cal.App.2d 775, 781 [312 P.2d 401]; maj. opn., *ante*, at p. 590) they nevertheless choose to follow other cases which hold that the term is not ambiguous. These cases explain the apparent conflict in opinions interpreting "household" by pointing to the difficulty in applying varying sets of facts to a fixed definition. (Maj. opn., *ante*, at p. 591.) Although I agree that *some* of the conflict in the cases can be explained by the difficulty of applying varying facts to a fixed definition, this does not answer the question of law before us: is the term "household" subject to two or more reasonable definitions? I conclude that it is. (See *Safeco Ins. Co.* v. *Gibson, supra*, 211 Cal.App.3d at p. 185, dis. opn. of Stone (W. A.), J.)

Ironically, the very case the majority cite to show that our Supreme Court has "adopted" a single definition of "household" in fact highlights the ambiguity of that term. (Maj. opn., *ante*, at pp. 591-592.) In *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541 [184 P.2d 153, 173 A.L.R. 896] the Supreme Court interpreted the term "household" as used in an auto policy clause *excluding* coverage. The *Island* court set out several definitions of the term. (*Id.*, at pp. 547-548.) These definitions—which the majority quote, *ante*, at page 592 of their opinion—show that there are at least two variables in defining "household." First, some definitions limit a "household" to family members, while others include all persons who live together under one head, whether related or not. (*Island, supra*, at pp. 547-548 [Household " 'is variously used to designate people . . . who live together in the same house, including the family, servants, and boarders, or it may be used as including only members of the family relation.' "].) Second, some definitions require that the persons constituting a household live to-

gether "in the same house" or "under one roof" while others are arguably broader in that they require that the persons live together "within one curtilage." (*Ibid.*) These varying definitions prove that the term "household" is subject to more than one reasonable interpretation, and is therefore ambiguous.

Moreover, the *Island* court itself concluded that the term is ambiguous. After quoting several definitions of "household," the *Island* court resolved the issue before it by relying on the "cardinal rule of interpretation . . . that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder. [Citations.] *This rule* requires the conclusion that Cave, Jr., was not a member of his father's household . . . ." (*Island v. Fireman's Fund Indemnity Co.*, *supra*, 30 Cal.2d at p. 548, italics added.) If the *Island* court believed the term "household" was unambiguous—that is, subject to only one reasonable interpretation—why did it apply the rule requiring it to pick the construction most favorable to the policyholder? Thus, the majority are simply wrong when they claim the *Island* court adopted a single definition of household which we are bound to follow as a matter of stare decisis. (Maj. opn., *ante*, at pp. 591-592.) If anything, we are bound by stare decisis to find the term ambiguous.

I also disagree with the majority's conclusion that the term "household" as used here is "authorized by statute" and thus not subject to the usual rules of insurance policy interpretation. (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230]; maj. opn., *ante*, at pp. 595-596.) "When a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature. [Citation.] In addition, the *statute* must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer (unlike ambiguous or uncertain policy language). [Citations.]" (*Prudential-LMI*, *supra*, at p. 684, italics added.) This rule has been applied only where the clause has been *directly* authorized by statute; for example, where the clause is part of a statutory standard form insurance policy (*id.*, at p. 680 [California Standard Form Fire Insurance Policy]; *Ichthys, Inc.* v. *Guarantee Ins. Co.* (1967) 249 Cal.App.2d 555, 558 [57 Cal.Rptr. 734] [same]) or is taken directly from statutory language addressing the precise issue addressed by the clause in the policy (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal.App.3d 652, 655-656 [172 Cal.Rptr. 263] [construction of Ins. Code, § 11580.2, subd. (h)(1)]; *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 245, 247 [66 Cal.Rptr. 374] [construction of Ins. Code, § 11580.2, subd. (c)(2)]). In this context, the rule makes sense, since it is the Legislature—not the insur-

er—which has chosen the language placed in the policy. (See *Interinsurance Exchange, supra,* 116 Cal.App.3d at p. 656.)

The majority concede that the clause under consideration here[1] is not part of a statutory homeowner's liability insurance policy, and was not taken from a statute which is concerned with the subject matter addressed by the clause in the policy. (Maj. opn., *ante,* at pp. 595-596.) Instead, the majority point to unrelated sections of the Insurance Code where the Legislature has used *similar* clauses. The mere fact the Legislature has used the word "household" at various points in the Insurance Code does not shelter that word from the normal rules of interpretation. Here, the language is that of the insurer, not of the Legislature, and the normal rules of interpretation apply. (See *Interinsurance Exchange* v. *Marquez, supra,* 116 Cal.App.3d at p. 656.)

Moreover, even if the term "household" is "authorized" by statute, the court must still construe the *statute*—not the policy language itself—to implement the intent of the Legislature. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 684.) The majority have not attempted to construe the statutory meaning of the term "household." How could they? There is no statute which authorizes the term in the context in which it is used in the policy. Thus, the majority would have to pick and choose among the various statutes where the term *is* used, and then transfer the legislative intent expressed in that statute to a different context not considered by the Legislature.

Finally, the majority's reliance on this rule is inconsistent with their finding that the term "household" is unambiguous. If this is true, the word can have only one meaning and resort to legislative intent is superfluous.

Despite all my differences with the majority's analysis, I nevertheless believe the majority have adopted the proper definition of "household" in this case because it is the broadest definition of the term which is consistent with the reasonable expectations of the insured. This definition is appropriate in cases interpreting clauses providing coverage. (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at pp. 807-808; maj. opn., *ante,* at p. 589.) However, the definition adopted here would not necessarily be proper in a case construing an exclusionary clause. (*Ibid.*)

Thus, I agree that in this case a "household" may be broadly defined as a collection of persons, whether related or not, who live together as a group

---

[1] "Insured means you and the following persons if permanent residents of your household; [¶] a. your relatives. [¶] b. anyone under the age of 21."

or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interests.[2]

However, I disagree with the majority's conclusion that, under this definition, there is no triable issue of fact Erma and Luis are members of the same household. Summary judgment "is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; see also *Spradlin* v. *Cox* (1988) 201 Cal.App.3d 799, 805-806 799 [247 Cal.Rptr. 347].) "The aim of the summary judgment procedure is to discover, . . . whether the parties possess evidence requiring the weighing procedure of a trial; the motion may be granted only if no triable issue of fact appears; the court may not pass upon the issue itself." (*G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 993 [91 Cal.Rptr. 227].)

.The evidence presented in the case at bench requires "the weighing procedure of a trial." (*G & D Holland Construction Co.* v. *City of Marysville, supra*, 12 Cal.App.3d at p. 993.) Unlike similar cases cited by the majority—*Watt by Watt* v. *Mittelstadt* (Mo.Ct.App. 1985) 690 S.W.2d 807 (where the plaintiff in any event *survived* a motion for summary judgment) and *Hernandez* v. *Comco Ins. Co.* (La.Ct.App. 1978) 357 So.2d 1368—there is evidence in this case from which a trier of fact could conclude that both Erma and Luis belonged to the same household, namely, the household headed by Connie.

To survive summary judgment, appellant was not required to show that Luis was a member of a household *headed* by Erma. Instead, it is enough if Luis and Erma were residents of the *same* household. Even when the courts have construed language similar to that under consideration here (i.e., "resident of your household") in an exclusionary clause, they have broadly interpreted the language to mean a resident of the same household as the insured, not a resident of a household headed by the named insured. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Hoffman* (1978) 77 Cal.App.3d 768, 772-775 [143 Cal.Rptr. 835], and cases there cited.) Consequently, appellant can prevail at trial if he proves Erma and Luis are members of one household headed by Connie.[3]

---

[2] I also agree with the qualifications of this definition in footnotes 5 and 6 of the majority opinion.

[3] Appellant's counsel raised a very similar theory at the hearing where the court changed its decision and granted the motion for summary judgment. However, the court refused to entertain this theory because, in its view, it had not been raised in the moving papers. I cannot agree with the trial court. It is absolutely clear from the evidence presented by appellant

Here, there is a triable issue of fact whether Erma and Luis are members of the household headed by Connie. There is no question that Luis belonged to the household headed by Connie. The more difficult question is whether Erma belonged to that household, or maintained her own separate household which *she* headed. In my view, appellant presented sufficient evidence on this issue to survive summary judgment.

Appellant presented evidence that Connie had daily contact with her grandmother, prepared her daily medications, took her to appointments, paid all her bills and generally took care of "all" her business. In addition, Connie has always had a key to her grandmother's unit and subjectively thinks of herself as her grandmother's caretaker. Indeed, Connie moved into the duplex to care for her ailing grandmother. Given Erma's extreme dependence on Connie, I believe a reasonable trier of fact could conclude that Erma is, in fact, a member of the household headed by Connie. This is true, even though they do not live "technically" under one roof (*Hernandez v. Comco Ins. Co.*, *supra*, 357 So.2d at p. 1370), although they arguably live within one curtilage. Since I believe there is a triable issue of fact on this issue, I would reverse the summary judgment.[4]

---

that he was relying on *Connie's* relationship to Erma to establish that Erma and Luis were members of the same household.

[4] The majority point to only two specific facts to support their conclusion to the contrary: Erma did not share meals with Connie's family and Erma subjectively did not consider Luis to be part of her household. (Maj. opn., *ante*, at p. 596.) Although these facts would be relevant to the issue at trial, they do not conclusively establish that Erma and Luis are members of different households.