**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**The ESTATE OF Kenneth John LAZIO, Gerald V. Aquilina, Jr., Joan Marie Ross as Guardian ad Litem for Anna Marie Aquilina, a minor, and Does 1 through 10, inclusive, Defendants.**

No. C–92–2914 VRW.

United States District Court,
N.D. California.

May 11, 1993.

Lawrence A. Baker, Haimes, Johnson, MacGowan & McInerney, Oakland, CA, for State Farm.

Patrick W. Emery, Steinberg & Emery, Santa Rosa, CA, for Joan Marie Ross, guardian ad litem for Anna Marie Aquilina.

Lawrence Bernheim, James, Gack, Bernheim & Freemen, Santa Rosa, CA, for Mid–Century Ins. Co.

Richard Carpeneti, Carpeneti & Carpeneti, San Francisco, CA, for Gerald J. Aquilina.

## ORDER

WALKER, District Judge.

At approximately 2:00 a.m. on June 15, 1991, in Sonoma County, California, Linda Aquilina was riding on the back of Kenneth Lazio's motorcycle when he crashed. Both Ms. Aquilina and Mr. Lazio suffered fatal injuries as a result of the accident. Ms. Aquilina's estranged husband, Gerald Aquilina, and her daughter's guardian, Joan Ross, then sued Mr. Lazio's estate in Sonoma Superior Court seeking damages for wrongful death. Plaintiff here, State Farm, seeks a judgment declaring that it has no duty to defend or indemnify Mr. Lazio's estate in the state court action.

State Farm, Joan Ross and Gerald Aquilina each move for summary judgment in the declaratory action. Summary judgment is appropriate here because, although conflicting inferences might be drawn from some of the evidence before the court, the facts themselves are largely undisputed and "[t]he only question here is the legal effect of these facts." *National Automobile & Casualty Insurance Company v. Underwood*, 9 Cal.App. 4th 31, 11 Cal.Rptr.2d 316 (1992).

At the time of the accident, Kenneth Lazio's parents held a Personal Umbrella Liability Policy issued by State Farm. This policy covered various additional insureds, including "the following residents of the named insured's household: (1) the named insured's relatives * * *." Thus, in order to determine whether State Farm has a duty to defend and indemnify Kenneth Lazio's estate, the court must decide whether Mr. Lazio was a resident of his parents' household at the time of the accident.

Kenneth Lazio was twenty-nine years old at the time of his death. He first moved out of his parents' Sebastopol, California, home in 1981. In 1987, Kenneth Lazio and his brother purchased a single-family home in Santa Rosa, California. They sold this home approximately two or three weeks before the accident. Mr. Lazio was planning then either to buy a home in Sonoma County or to build a house in Arizona, where he once went to school. In the meantime, prior to moving out of his Santa Rosa home, Kenneth Lazio asked his parents if he could live with them for a time until he found a new house. His parents willingly acceded to his request. Immediately after selling his Santa Rosa home, Mr. Lazio moved most of his possessions into a storage unit. He then left on a vacation trip to Arizona.

He returned from Arizona on June 13, 1991. That night, he slept in a sleeping bag on his parents' living room floor. His father

was planning to clear an extra bedroom so that in the future he could sleep there. Of course, Mr. Lazio never slept in that extra bedroom. On June 14, 1991, Mr. Lazio ate dinner with his parents at their house and then left for the evening at about 7:00 p.m. As noted previously, he died approximately seven hours later.

At the time of his death, Kenneth Lazio had not yet decided where he would next permanently reside. His parents believed that his stay at their home would be temporary. Vicki Sluder, an alleged girlfriend of Mr. Lazio, has said that Mr. Lazio once discussed the possibility of moving in with her. Still, on June 13, 1991, Mr. Lazio went to the California Department of Motor Vehicles and stated that his current address was at his parents' house. After he sold his Santa Rosa home, Mr. Lazio informed the North Bay Title Company, which handled the escrow, that his address for tax purposes was his parents' address in Sebastopol. Mr. Lazio also instructed the Post Office to deliver his mail to his parents' address, although he may have first tried unsuccessfully to secure a Post Office Box.

The evidence is clear, then, that at the time of his death, Mr. Lazio had no other address or residence other than his parents' house. Nevertheless, State Farm insists that Mr. Lazio was not a resident of his parents' household for insurance coverage purposes. In asserting this position, State Farm relies on a number of cases where courts have considered the effect of the household resident language in insurance policies. A discussion of four of these cases should serve adequately to explicate State Farm's position.

In *Vanguard Insurance Company v. Hartford Insurance Company*, 9 Cal.App.3d 765, 88 Cal.Rptr. 628 (1970), the parents of David Meyers, a thirteen year-old boy, had arranged for David to spend the weekend with the Anderson family. During the course of the weekend, David was involved in a bicycle accident which killed another bicyclist. The Court of Appeal held that David Meyers was not a resident of the Andersons' household at the time of the accident and hence was not

covered by their homeowner's insurance policy.

In *Jacobs v. Fire Insurance Exchange*, 227 Cal.App.3d 584, 278 Cal.Rptr. 52 (1991), the tortfeasor was an eighteen year-old boy who lived with his father and stepmother in one unit of a duplex apartment. His stepmother's grandmother lived in the other unit and owned the entire duplex. Each unit had a separate entrance, mailbox, kitchen and bathroom, but the stepmother spent a considerable amount of time next door caring for her grandmother. The tortfeasor's own involvement in caring for the grandmother was "limited." 278 Cal.Rptr. at 54. Based on these facts, a split Court of Appeal ruled that the tortfeasor was not a resident of the grandmother's household for insurance purposes.

In *Island v. Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 184 P.2d 153 (1947), the California Supreme Court determined that a man who entered military service on December 16, 1942, was not a resident of his father's household when his father was involved in an auto accident in April, 1943.

In *Lumbermens Mutual Casualty Company v. Pulsifer*, 41 F.Supp. 249 (D.Me.1941), Elton Pulsifer, a twenty-five year-old with a wife and child, moved his family into his parents' home temporarily because he was jobless and without sufficient resources to support his family independently. The two families shared a living room, kitchen, housework and expenses. The court ruled, however, that Elton was not a member of his father's household, since "[e]ach family retained its own organization under its own head and did not merge to make one family or one household * * *." 41 F.Supp. at 251–252.

Of these four cases, only *Lumbermens* is not easily distinguishable from the case at bar. In *Vanguard*, the alleged tortfeasor had a definite permanent residence at his own parents' house and was merely a weekend guest of the policyholder at the time of the accident. In *Jacobs*, the tortfeasor did not even live with the policyholder; he lived next door to the policyholder, spent little time with her, and was not a blood relation of hers. Similarly, in *Island*, the son was away

on extended military duty at the time his father had an accident. In contrast to the facts in *Vanguard, Jacobs* and *Island,* the evidence here shows that Kenneth Lazio was living at his parents' house on an indefinite, albeit temporary, basis at the time the accident occurred.

Were *Lumbermens* binding authority on this court, State Farm might have strong support for its position, for the household relations between the two Pulsifer families discussed in *Lumbermens* were in many ways more intertwined than the relations between Kenneth Lazio and his parents. Obviously though, this court is not bound by a decision from the District Court of Maine. In fact, since this case calls for the court to interpret an insurance contract entered into in California, the court must look to California case law for primary guidance. *Aetna Casualty & Surety Company v. Sheft,* 989 F.2d 1105 (9th Cir.1993).

Relevant California case law suggests that the appropriate definition of household is not so rigid that Kenneth Lazio should not be considered to have been a member of his parents' household. For instance, in *Hardware Mutual Casualty Company v. Home Indemnity Company,* 241 Cal.App.2d 303, 50 Cal.Rptr. 508 (1966), the Court of Appeal held that "a resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." 50 Cal.Rptr. at 514. Applying this definition, the court determined that the twenty-two year-old tortfeasor was a resident of his aunt and uncle's household even though prior to the tort he spent only a few days ("two days to two weeks according to the testimony," 50 Cal.Rptr. at 513) at their house and simultaneously maintained another apartment which he shared with his cousin.

The court in *Dalton v. Metropolitan Property & Liability Insurance Company,* 136 Cal.App.3d 1037, 186 Cal.Rptr. 685 (1982), reached the same conclusion where a husband and wife had been married for three weeks and had lived together only in various hotels when the husband absconded with the wife's car, never to be seen again. The *Dalton* court reasoned that it would undermine the certainty of insurance coverage were the court to attempt to discern the husband's subjective intent at the time of the theft. Thus, the court found that "the spouse's intention to return or not to return to the other spouse [was not] relevant in determining whether husband was a member of wife's household for insurance purposes." 186 Cal.Rptr. at 688.

This review of the California case law leads the court to conclude that Mr. Lazio was in fact a resident of his parents' household at the time of the accident which caused the death of Ms. Aquilina. Though he had stayed at his parents' for only one night and probably would have stayed on there for only a few weeks, his ties to his parents' household show sufficient indicia of residence. As noted above, for all known official purposes, his address was his parents' address. More importantly, he simply had no other possible residence. He was going to buy a new home for himself, but had not yet done so. He was thinking about living with his girlfriend, but had not decided to do that either. As of June 15, 1991, Kenneth Lazio was for the time being, if not permanently, a resident of his parents' household. Accordingly, the motions for summary judgment filed by Gerald Aquilina and Joan Ross are **GRANTED** and State Farm's motion is **DENIED.**

SO ORDERED.